Debra A. Dandeneau
David Zaslowsky
Kirsten Dooley
Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: debra.dandeneau@bakermckenzie.com
david.zaslowsky@bakermckenzie.com
kirsten.dooley@bakermckenzie.com

*Counsel for Christopher Spadafora*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |
| MOHSIN Y. MEGHJI, LITIGATION ADMINISTRATOR, AS REPRESENTATIVE FOR THE POST-EFFECTIVE DATE DEBTORS, | Adv. Proc. No. 24-03981 (MG) |
| Plaintiff, | |
| v. | |
| CHRISTOPHER SPADAFORA CLOUDFLARE, INC., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANT CHRISTOPHER SPADAFORA'S MOTION TO DISMISS**

---

[1] The Debtors in these chapter 11 cases (the "**Chapter 11 Cases**"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these Chapter 11 Cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ............................................................................... 1

II.  RELEVANT BACKGROUND.............................................................................. 3

III.  ARGUMENT AND AUTHORITIES ................................................................. 6

    A.  The Complaint Should Be Dismissed for Lack of Personal Jurisdiction over Mr. Spadafora............................................................................................................ 6

    B.  The Claim Against Mr. Spadafora Is Precluded Because the Chapter 11 Plan Did Not Adequately Preserve the Claim Against Mr. Spadafora ..................................... 14

    C.  The Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted as to Plaintiff's Breach of Fiduciary Duty Claim ................. 18

IV.  CONCLUSION .................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                    **Page(s)**

*AmTrust Fin. Servs., Inc. v. Lacchini,*
   260 F. Supp. 3d 316 (S.D.N.Y. 2017) ................................................................................... 12

*Asahi Metal Indus. Co. v. Superior Ct.,*
   480 U.S. 102 (1987) ................................................................................................................ 13

*Atlantis Info. Tech. v. CA, Inc.,*
   485 F. Supp. 2d 224 (E.D.N.Y. 2007) ..................................................................... 19, 21, 23

*Bristol-Myers Squibb v. Superior Ct. of CA,*
   582 U.S. 255 (2017) ....................................................................................................... 2, 7, 8

*Browning v. Levy,*
   283 F.3d 761 (6th Cir. 2002) ................................................................................................ 15

*D & K Props. Crystal Lake v. Mut. Life Ins. Co. of New York,*
   112 F.3d 257 (7th Cir. 1997) ................................................................................................ 15

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014) .................................................................................................................. 7

*Faith Assembly v Titledge of N.Y. Abstract, LLC,*
   106 A.D.3d 47 (2d Dep't 2013) ................................................................................ 19, 24, 25

*Ford Motor Company v. Montana Eighth Judicial District Court,*
   592 U.S. 351 (2021) ....................................................................................................... 2, 7, 8

*Friedman v. Bloomberg L.P.,*
   884 F.3d 83 (2d Cir. 2017) ...................................................................................................... 6

*Gall v. Colon-Sylvain,*
   151 A.D.3d 698 (2d Dep't 2017) ........................................................................................... 19

*Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
   No. 00 CIV.8688(WHP), 2004 WL 1119652 (S.D.N.Y. May 20, 2004) ................................. 14, 16, 17

*Grow Grp., Inc. v. Jandernoa,*
   1996 WL 31848 (S.D.N.Y. Jan. 26, 1996) .............................................................................. 6

*Gurney's Inn Resort & Spa Ltd. v. Benjamin,*
   878 F. Supp. 2d 411 (E.D.N.Y. 2012) .................................................................................. 17

*In re Hellas Telecommunications (Luxembourg) II SCA,*
   524 B.R. 488 (Bankr. S.D.N.Y.) (Glenn, J.) ......................................................................... 10

*In re I. Appel Corp.,*
   104 F. App'x 199 (2d Cir. 2004) ........................................................................................... 15

*In re I. Appel Corp.*,
    300 B.R. 564 (S.D.N.Y. 2003) ............................................................................... 15

*In re Kelley*,
    199 B.R. 698 (9th Cir. BAP1996) .......................................................................... 15

*In re Lehman Bros. Holdings Inc.*,
    535 B.R. 608 (Bankr. S.D.N.Y. 2015) ...................................................................... 6

*Met. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) ................................................................................... 12

*MF Glob. Holdings USA Inc. v. Heartland Co-Op*,
    No. 11-15059 (MG), 2017 WL 1373267 (Bankr. S.D.N.Y. Apr. 13, 2017) ................................... 14, 16

*In re Mid-Island Hosp., Inc.*,
    276 F.3d 123 (2d Cir. 2002) ................................................................................. 19

*MSP Recovery Claims, Series LLC v. Takeda Pharms. Am., Inc.*,
    No. 19 CIV. 5610 (NRB), 2021 WL 4461773 (S.D.N.Y. Sept. 29, 2021)......................................... 12

*Oddo Asset Mgmt. v. Barclays Bank PLC*,
    19 N.Y.3d 584 (2012)......................................................................................... 20

*Pauwels v. Deloitte LLP*,
    83 F.4th 171 (2d Cir. 2023) .............................................................................. 19, 20

*Picard v. BNP Paribas, S.A.*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ........................................................................ 10

*Picard v. Estate (Succession) of Igoin*,
    525 B.R. 871 (Bankr. S.D.N.Y. 2015) ........................................................................ 13

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
    627 B.R. 546 (Bankr. S.D.N.Y. 2021) ......................................................................... 6

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
    *23 N.Y.3d 549 (2014)* ...................................................................................... 17

*Sec. & Exch. Comm'n v. Terraform Labs Pte. Ltd.*,
    684 F. Supp. 3d 170 (S.D.N.Y. 2023) ........................................................................ 10

*Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities
    LLC*,
    647 B.R. 42 (Bankr. S.D.N.Y. 2022) .......................................................................... 6

*In re SI Restructuring Inc.*,
    714 F.3d 860 (5th Cir. 2013).............................................................................. 15

*In re Solutia, Inc.*,
    653 B.R. 99 (Bankr. S.D.N.Y. 2023) (Glenn, J.)......................................................... 14, 16

*SPV Osus Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018) ........................................................................................ 6, 10

*Starostenko v. UBS AG (A Swiss Bank)*,
   No. 19 CIV. 9993 (KPF), 2023 WL 34947 (S.D.N.Y. Jan. 4, 2023) ............................. 11, 12

*United States v. Chestman*,
   947 F.2d 551 (2d Cir. 1991) .............................................................................................. 22

*Walden* v. *Fiore*,
   571 U.S. 277 (2014) .............................................................................................. 6, 8, 9, 10

*WIT Holding Corp. v. Klein*,
   282 A.D.2d 527 (2001) ...................................................................................................... 21

**Statutes**

28 U.S.C. § 1123(b)(3) ............................................................................................................ 14, 18

28 U.S.C. § 1123(b)(3)(B) ............................................................................................................ 14

Tenn. Code Ann. § 48-250-109 .................................................................................................... 22

Vt. Stat. Ann. tit. 11, § 4003(c)(4) (2015) ................................................................................... 22

Vt. Stat. Ann. tit. 11, § 4176 (2017)............................................................................................. 22

Wyo. Stat. Ann. § 17-31-110 ....................................................................................................... 22

**Other Authorities**

Fed. R. Civ. P. 12(b)(2)............................................................................................................. 3, 6

Christopher Spadafora ("**Defendant**" or "**Mr. Spadafora**"), by and through his undersigned counsel, respectfully submits this memorandum of law in support of the *Motion to Dismiss* (with prejudice) (the "**Motion**"),[2] filed contemporaneously herewith, the claims against Defendant asserted in the Complaint (Dkt. No. 7490) (the "**Complaint**") filed by Plaintiff, as the litigation administrator of the post-effective date Debtors ("**Plaintiff**").

## I.    PRELIMINARY STATEMENT

1.      Celsius alleges that it deposited assets on the BadgerDAO platform and that, due to the actions of an outside cyber attacker in early December 2021 (the "**December Hack**"), Celsius and others lost a portion of the assets they had deposited on the BadgerDAO platform. Celsius further alleges that the hack was the fault of Defendant Cloudflare, an internet security company that provided security services to BadgerDAO. Because of this loss, in its Plan, Celsius expressly reserved the right to bring claims relating to the December Hack against only two parties—BadgerDAO and Cloudflare. For reasons known only to Plaintiff, it made a last-minute decision *not* to sue BadgerDAO (as the Chapter 11 Plan stated), but instead to go after one of BadgerDAO's founders, Mr. Spadafora, alleging that he owed fiduciary duties to Celsius.

2.      For several reasons, the Complaint must be dismissed. Mr. Spadafora is a Canadian citizen. All actions he took with respect to BadgerDAO were taken while he was in Canada. Moreover, in a case about a security breach, the only specific allegations that have been made in the Complaint against Mr. Spadafora relating to security are that he said (while in Canada) that BadgerDAO had robust security and that he once wrote in an email (sent from Canada) that BadgerDAO took security "very seriously." Neither of these actions was taken in the United States.

---

[2] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Motion or in the Complaint.

3. There is no basis for haling Mr. Spadafora before a United States federal court in connection with the hack that gives rise to Plaintiff's claim. In the words of the United States Supreme Court, to establish specific jurisdiction, "what is needed . . . is a *connection* between the forum and the specific claims at issue." *Bristol-Myers Squibb v. Superior Ct. of CA*, 582 U.S. 255, 265 (2017) (emphasis added). Furthermore, "when there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 256. Or, as the Supreme Court said in *Ford Motor Company v. Montana Eighth Judicial District Court*, jurisdiction does not exist unless *the defendant* has "conducted activities within the forum" and "enjoyed the benefits and protections of its laws" such that the defendant "must reasonably anticipate being haled into that [forum's] courts." 592 U.S. 352, 359-60, 364 (2021) (cleaned up). Because Mr. Spadafora conducted no activities in the United States, this Court cannot assert specific jurisdiction over him.

4. Plaintiff has its case against Cloudflare to answer for the December Hack, which Plaintiff alleges was the party at fault due to an alleged vulnerability in its software (an issue on which Mr. Spadafora takes no position at this time). Mr. Spadafora, a Canadian citizen, never anticipated that the work that he did exclusively in Canada relating to a decentralized finance platform would subject him to being sued in any country in which some other member of that platform resided. A finding that a United States federal court has jurisdiction over Mr. Spadafora would be tantamount to a finding that a court in any one of the many countries in which BadgerDao's community members reside would have jurisdiction over Mr. Spadafora as a result of the December Hack. But that's not how notions of fair play and substantial justice—essential components of due process—work.

5.      The Complaint should accordingly be dismissed under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Although dismissal for lack of personal jurisdiction normally would be without prejudice, the Complaint against Mr. Spadafora should be dismissed with prejudice. Celsius failed to preserve such claim in its Plan, and the single cause of action against Mr. Spadafora, a claim for breach of fiduciary duty, fails to state a claim. No fiduciary relationship ever existed between Mr. Spadafora and Celsius, and the Complaint fails to allege any facts to support such a finding.

## II.    RELEVANT BACKGROUND

### (a)    About Mr. Spadafora

6.      Mr. Spadafora is a Canadian citizen who lives in Toronto. Declaration of Christopher Spadafora (("Spadafora Decl.") ¶¶ 4-5). He attended Toronto Metropolitan University (then known as Ryerson University) and worked at the university's incubator for entrepreneurs. *Id.* ¶ 6. Mr. Spadafora is an experienced and highly regarded entrepreneur and has founded several Canadian-based e-commerce and fin-tech projects, including Fitness Décor and North Block. *Id.* ¶ 8.

7.      Mr. Spadafora owns no property in the United States, has no bank accounts in the United States, and has no businesses registered in the United States. *Id.* ¶¶ 9-12.

### (b)    Founding and Contributing to BadgerDAO

8.      In 2020, Mr. Spadafora, along with Thomas Spofford, Ameer Rosic, Albert Castellana, and Alberto Cevallos, started BadgerDAO (*id.* ¶ 13), a decentralized autonomous organization ("**DAO**"), with the mission of building the infrastructure and products necessary to accelerate Bitcoin as collateral across other blockchains. Comp. ¶ 34.

9.      Inasmuch as BadgerDAO was (and is) a decentralized project, any BadgerDAO community member could propose new ideas to the DAO. *Id.* ¶ 15. At BadgerDAO, decisions on

- 3 -

these ideas were made through a public voting process. Comp. ¶ 35; Spadafora Decl. ¶ 15. Moreover, $BADGER, BadgerDAO's tokens that were used for voting, were provided to all stakeholders proportionate to their investment in BadgerDAO on a one-token, one-vote basis. Spadafora Decl. ¶ 14.

10.     As BadgerDAO was a community-led initiative, many community members volunteered their time, skills, and efforts to make BadgerDAO the best at building infrastructure and products to support Bitcoin. *Id.* ¶ 16. Such members were referred to as "contributors." *Id.*

11.     BadgerDAO had no centralized leadership team. *Id.* ¶ 15. Everything was community-led. *Id.* Mr. Spadafora was one of the founders of BadgerDAO, but otherwise considered himself a "contributor" and "member." *Id.* ¶ 16. He dedicated his time to building community relationships and promoting BadgerDAO. *Id.*

12.     Mr. Spadafora was not a developer and does not know how to code. *Id.* ¶ 17. He does not have the technical skills to make or implement decisions about security. *Id.* Members of the BadgerDAO community with skills and interest in security were the ones responsible for security. *Id.* ¶¶ 16, 18. Mr. Spadafora did not oversee or manage BadgerDAO's security efforts and did not control or give direction to any other individual or entity in connection with any security issues raised in the Complaint. *Id.* ¶ 19.

13.     Mr. Spadafora was not involved in the decision to choose Cloudflare as a security service provider. *Id.* ¶ 20. Before the security breach, Mr. Spadafora had never spoken to Cloudflare and did not work with Cloudflare in any way. *Id.* ¶ 20.

### (c)     *The BadgerDAO and Celsius Transaction*

14.     According to the Complaint, in January 2021, a mutual friend connected Mr. Spadafora to the C.E.O. of Celsius, Alexander Mashinsky. Comp. ¶ 46. Subsequently, "upon information and belief," Messrs. Mashinsky and Spadafora met. *Id.* The implication of the

allegation being on "information and belief" is that Mr. Mashinsky does not know if such a meeting ever took place; also, the use of the word "met" implies an in-person meeting. Mr. Spadafora recalls speaking with Mr. Mashinsky, but the "meeting" was virtual, and Mr. Spadafora was in Canada. Spadafora Decl. ¶ 21. Mr. Spadafora had no in-person meetings (whether with Mr. Mashinsky or anyone else) in the United States as it pertains to this case. *Id.* ¶ 23.

15. According to the Complaint, in February 2021, Celsius began participating in BadgerDAO's offerings by staking tokens in its various Sett Vaults. Comp. ¶ 52. Throughout 2021, the Complaint claims, Mr. Spadafora communicated with Celsius employees over the phone and through email and messaging platforms, such as Slack and Telegram. Comp. ¶¶ 47-49. All written communications from Mr. Spadafora were sent from outside the United States. Spadafora Decl. ¶ 27. Mr. Spadafora was also outside the United States for all telephone or virtual meetings with Celsius. *Id.* Mr. Spadafora never met any Celsius employee in person. *Id.* ¶ 22. At all times relevant to the specific allegations in the Complaint concerning Mr. Spadafora, he was outside of the United States. *Id.* ¶ 23. The location of Celsius's representatives during Mr. Spadafora's interactions with them was unimportant to Mr. Spadafora—so much so that he never even asked about the location. *Id.* ¶ 22.

### (d)      The December 2021 Hack

16. Mr. Spadafora was not responsible for security measures for BadgerDAO. *Id.* ¶ 19. The Complaint, however, seeks to implicate Mr. Spadafora merely on the basis that he is alleged to have taken part in conversations about security prior to the December Hack (Comp. ¶ 50), and that he had sent an email to "summarize key points about security," such as that BadgerDAO took security "VERY VERY seriously" (Comp. ¶ 51). This is the full extent of allegations concerning Mr. Spadafora's security-related activities before the December Hack.

17. In early December 2021, the December Hack occurred. Comp. ¶ 54.

## III. ARGUMENT AND AUTHORITIES

### A. The Complaint Should Be Dismissed for Lack of Personal Jurisdiction over Mr. Spadafora

18. "To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (citation and quotation marks omitted).[3]

19. The plaintiff has the burden of proving that the court has personal jurisdiction over each defendant. *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017). Each defendant's contact with the forum must be evaluated individually; other parties' and third parties' unilateral contact with the forum is not an appropriate consideration. *Walden* v. *Fiore*, 571 U.S. 277, 284 (2014); *see also Grow Grp., Inc. v. Jandernoa*, 1996 WL 31848, at *5 (S.D.N.Y. Jan. 26, 1996) (It is "plainly unconstitutional" for a plaintiff to group defendants together to "aggregat[e]" their jurisdictional contacts.) (citing *Rush v. Savchuk*, 444 U.S. 320, 322 (1980)).

20. To survive a Rule 12(b)(2) motion to dismiss, a plaintiff must make a *prima facie* showing of personal jurisdiction. *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC*, 647 B.R. 42, 55 (Bankr. S.D.N.Y. 2022). Good faith, legally sufficient allegations of personal jurisdiction are enough in the pre-discovery stage. *Id*. However, such allegations do not suffice where the defendant counters them with "direct, highly specific testimonial evidence regarding a fact essential to jurisdiction," and the plaintiff is unable to counter it. *In re Lehman Brothers Holding Inc.*, 535 B.R. 608, 618 (Bankr. S.D.N.Y. 2015).

---

[3] In bankruptcy proceedings "courts must determine whether the defendant has minimum contacts with the United States, rather than with the forum state." *Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 565 n.13 (Bankr. S.D.N.Y. 2021) (citing *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 619 (Bankr. S.D.N.Y. 2015)).

21. For the reasons set forth below, constitutional due process requires that the Plaintiff's action against Mr. Spadafora be dismissed for lack of personal jurisdiction.

### (a)   *General Jurisdiction Does Not Exist over Mr. Spadafora in the United States*

22. Personal jurisdiction may be either general or specific. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017). Domicile is defined as "the place at which a person has been physically present and that the person regards as home." Domicile, *Black's Law Dictionary* (12th ed. 2024). Put otherwise, general jurisdiction exists where the defendant's contacts with the forum are "so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

23. The Complaint does not assert general jurisdiction over Mr. Spadafora. It does not allege that Mr. Spadafora is domiciled in the United States. Indeed, he is not. He is domiciled in Canada. Spadafora Decl. ¶¶ 3-8.

### (b)   *Specific Jurisdiction Does Not Exist over Mr. Spadafora in the United States Because His Security-Related Conduct Has No Connection to the United States*

24. As the Supreme Court has explained, "for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb*, 582 U.S. at 265 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Furthermore, to establish specific jurisdiction, "what is needed . . . is *a connection* between the forum and the specific claims at issue." *Bristol-Myers Squibb*, 582 U.S. at 265 (emphasis added). The Supreme Court subsequently explained that these words meant there was no specific jurisdiction in *Bristol-Myers* "because the forum State, and the defendant's activities there, lacked any connection to the plaintiffs' claims." *Ford Motor Company v. Montana Eighth*

- 7 -

*Judicial District Court*, 592 U.S. 351, 369 (2021). Here, as shown below, the Complaint does not connect *any activities* by Mr. Spadafora in the United States to Plaintiff's claim arising from the December Hack. "[W]hen there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb*, 582 U.S. at 256.

25.    Also relevant to the jurisdictional analysis here is the Supreme Court's decision in *Walden v. Fiore*, in which the Court stated that specific jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." 571 U.S. 277, 284 (2014). Relatedly, the minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 285. The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id*. Jurisdiction does not exist unless the defendant has conducted activities within the forum and received the accompanying benefits and protections of that forum's laws such that the defendant has fair warning that it could be haled into court there. *Ford Motor Company*, 592 U.S. at 360.

26.    The core of Plaintiff's claims is that it lost its assets deposited on BadgerDAO's platform due to vulnerabilities in Cloudflare's software. But the Complaint fails to show that there is any "connection" between Mr. Spadafora's alleged actions related to security, let alone the security breach, and the United States, as required by the Supreme Court's decision in *Bristol-Myers Squibb*. Indeed, Mr. Spadafora was outside the United States at all times relevant to the specific allegations in the Complaint that give rise to Plaintiff's claims. *See, e.g.*, Spadafora Decl. ¶ 23.

- 8 -

27.     Plaintiff makes only two allegations about specific actions that Mr. Spadafora took with respect to security. First, Plaintiff alleges that Mr. Spadafora had conversations with Celsius's Chief Security Officer concerning BadgerDAO's "security protocols and infrastructure," namely that they were "robust." Comp. ¶ 50. But these conversations are not even alleged to have occurred in the United States—because they did not. Mr. Spadafora was at home in Canada when any conversations with Celsius representatives occurred. Spadafora Decl. ¶ 27.

28.     Second, Plaintiff alleges that, on May 14, 2021, Mr. Spadafora sent an email to Celsius summarizing key points about security, including that BadgerDAO takes security "VERY VERY seriously." Comp. ¶ 51. Again, the Complaint does not allege that this communication was sent from the United States, nor could it. All emails Mr. Spadafora wrote to Celsius were sent from outside the United States. Spadafora Decl. ¶ 27.

29.     Mr. Spadafora was not responsible for establishing security for BadgerDAO and, as already noted, did not participate in choosing Cloudflare as a security service provider. Spadafora Decl. ¶¶ 19-20. Mr. Spadafora did not take any actions in the United States relating to BadgerDAO security. *Id.* ¶ 19. Indeed, the Complaint does not allege that Mr. Spadafora took any actions in the United States relating to BadgerDAO security (or, for that matter, that he took *any* action in the United States in connection with the relationship between Celsius and BadgerDAO).

30.     The only allegations in the Complaint about any presence in the United States is the intimation that *Celsius* representatives were in the United States when they interacted with Mr. Spadafora. *See also id.* ¶ 24 (explaining that Celsius employees created Telegram and Slack channels, and through these channels, they communicated with BadgerDAO members, including Mr. Spadafora). *Walden*, though, specifically rejected relying on a plaintiff's contacts to establish specific jurisdiction. 571 U.S. at 284. Indeed, in *Walden*, the Supreme Court reversed the Ninth

Circuit's decision holding that there was specific jurisdiction because that court made an error "by shifting the analytical focus from petitioner's contacts with the forum to his contacts with respondents[.]" 571 U.S. at 289:

> This approach to the "minimum contacts" analysis impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis. Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections "decisive" in the jurisdictional analysis.

That is exactly what Plaintiff is doing here—trying to attribute Celsius's presence in the United States to Mr. Spadafora. Just as it did not work in *Walden*, it cannot work here.

31.     Additionally, none of Mr. Spadafora's alleged actions were the proximate cause of Plaintiff's injury. Under Second Circuit precedent, the relationship between the in-forum conduct and a plaintiff's injury "depends on the relationship among the defendant, the forum, and the litigation." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (citing *Chew v. Dietrich,* 143 F.3d 24, 29 (2d Cir. 1998)):

> Where the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts. Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.

*Id.* at 344. This Court has followed this standard. *See In re Hellas Telecommunications (Luxembourg) II SCA,* 524 B.R. 488, 511 (Bankr. S.D.N.Y.) (Glenn, J.) (*quoting Chew*, 143 F.3d at 29); *see also Sec. & Exch. Comm'n v. Terraform Labs Pte. Ltd.*, 684 F. Supp. 3d 170, 185 (S.D.N.Y. 2023) (quoting *SPV Osus Ltd.*, 882 F.3d at 344) ("Where, for instance, the defendant has 'only limited contacts with the state,' the plaintiff must show that those contacts proximately caused the harm complained of."); *accord Picard v. BNP Paribas, S.A.*, 594 B.R. 167, 190 (Bankr.

S.D.N.Y. 2018); *Starostenko v. UBS AG (A Swiss Bank)*, No. 19 CIV. 9993 (KPF), 2023 WL 34947, at *7 (S.D.N.Y. Jan. 4, 2023) ("The Second Circuit has established a sliding scale to determine . . . the exercise of specific jurisdiction," and the proximate cause test is used for defendants that have had only limited contacts with the forum) (citation and quotation marks omitted).

32.      Because Mr. Spadafora had *no relevant contacts* with the United States, this case certainly fits into the "limited contacts" category, meaning that Plaintiff must establish proximate cause—*i.e.*, Mr. Spadafora's conduct was the proximate cause of Celsius's injury. It cannot do so. The proximate cause of Celsius's injury was the December Hack. That had absolutely nothing to do with Mr. Spadafora's conduct.

33.      As previously noted, Plaintiff only makes two allegations of conduct against Mr. Spadafora with respect to security. There is the allegation that Mr. Spadafora participated in conversations representing that BadgerDAO had "robust" security. Comp. ¶ 50; *but see* Spadafora Decl. ¶ 27 (explaining that Mr. Spadafora's statements about security were merely reiterating information publicly available on BadgerDAO's website and which website statements he did not participate in drafting). There is also an allegation of an email Mr. Spadafora sent on May 14, 2021 that said that BadgerDAO "take[s] security VERY VERY seriously." Comp. ¶ 51. These alleged statements were not the proximate cause of Celsius's losses.

34.      Indeed, the date of Mr. Spadafora's email makes clear that it was not *any* cause of Celsius's loss, much less the proximate cause. The email was dated May 14, 2021. Comp. ¶ 51. Celsius began purchasing $BAGDER tokens months earlier, "in February and March 2021." Comp. ¶ 52. Accordingly, the allegation in the Complaint that Celsius invested in February "in reliance"

on an assurance made in May (Comp. ¶ 52) is patently false. Mr. Spadafora's email could not have caused Celsius's loss because Celsius invested before Mr. Spadafora wrote it.[4]

### (c)    Even if Mr. Spadafora Had Sufficient Contacts with the United States, it Would Be Unreasonable to Exercise Personal Jurisdiction over Him

35.    Because minimum contacts are lacking, the Court does not have to consider the second part of the jurisdictional analysis—whether the exercise of jurisdiction would be "reasonable" here. *See*, *e.g.*, *AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 334 (S.D.N.Y. 2017). In any case, Plaintiff would fail that test as well. Under Second Circuit precedent, only "[w]here a plaintiff makes the threshold showing of the minimum contacts required for the first test" must a defendant "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *MSP Recovery Claims, Series LLC v. Takeda Pharms. Am., Inc.*, No. 19 CIV. 5610 (NRB), 2021 WL 4461773, at *3 (S.D.N.Y. Sept. 29, 2021) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002)). Put otherwise, the weaker the connection of the defendant with the forum, "the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Met. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996); *see also Starostenko v. UBS AG (A Swiss Bank)*, No. 19 CIV. 9993 (KPF), 2023 WL 34947, at *7 (S.D.N.Y. Jan. 4, 2023) ("The Second Circuit has established a sliding scale to determine . . . the exercise of specific jurisdiction. . . .") (citation and quotation marks omitted).

36.    Here, Mr. Spadafora's connection under the first test could not possibly be weaker, considering he did nothing in the forum. Thus, his burden is relatively low to show unreasonableness.

---

[4] Not all courts agree that the proximate cause test has been fully adopted in the Second Circuit. But even under a "but-for" test, Celsius's injury was not caused by Mr. Spadafora's forum conduct.

37. Courts evaluate five factors in determining whether jurisdiction is reasonable:

(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Picard v. Estate (Succession) of Igoin*, 525 B.R. 871, 880-81 (Bankr. S.D.N.Y. 2015); *accord Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113 (1987). Here, the Court should dismiss the Complaint because exercise of personal jurisdiction over Mr. Spadafora in this matter would be unreasonable.

38. *First*, it would be extremely burdensome financially, professionally, and personally for Mr. Spadafora, an individual, to endure the rigors of litigation in a foreign country in which he took no actions relating to this claim. Given that the unreasonableness burden here is light, this factor should be determinative.

39. *Second*, this Court has an interest in adjudicating recovery actions brought by the Litigation Administrator, but not disputes such as this one. The United States would not be served by involving itself in Celsius's allegations against a foreign defendant, where the defendant has no connection to the United States or the claims at issue.

40. *Third*, Celsius has filed thousands of adversary proceedings in its efforts to obtain relief. This particular dispute, as it pertains to Mr. Spadafora, does not further those efforts. Plaintiff has its case against Cloudflare to answer for the December Hack, which Celsius alleges was the party at fault due to an alleged vulnerability in Cloudflare's software.

41. *Fourth*, neither the interstate judicial system (or, more aptly in this case, the international judicial system) nor the shared interest of the states is served by allowing foreign individuals to be haled into United States courts, where the defendant has no connection to the United States or the claims at issue.

- 13 -

42.     *Fifth*, no social policies are at issue in this case.

43.     For all these reasons, it would be unreasonable to exercise personal jurisdiction over Mr. Spadafora under the circumstances of this case. Any other decision is tantamount to holding that any member of a DAO is subject to being sued in any country in the world in which there was a second member of the DAO that claimed that the first wronged him in some way. That is inherently unreasonable.

**B.   The Claim Against Mr. Spadafora Is Precluded Because the Chapter 11 Plan Did Not Adequately Preserve the Claim Against Mr. Spadafora**

44.     Section 1123(b)(3) of title 11 of the United States Code provides that "a plan may" identify causes of actions that a debtor intends to preserve and pursue post-confirmation. Although this language is permissive, most courts, including this Court, agree that, unless a debtor "sufficiently identifies and reserves its [] claims against defendants in its plan . . . [they will] be precluded by the application of *res judicata*." *In re Solutia, Inc.*, 653 B.R. 99, 123 (Bankr. S.D.N.Y. 2023) (Glenn, J.).[5]

45.     Courts are divided on the issue of what language is sufficient to preserve a particular cause of action. Most courts hold that a blanket statement purporting to reserve any and all claims is futile; rather, the chapter 11 plan must expressly reserve the right to pursue a particular claim post-confirmation. *See Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 CIV. 8688 (WHP), 2004 WL 1119652, at *3 (S.D.N.Y. May 20, 2004) ("A majority of courts have

---

[5] *See also*, *e.g.*, *Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 CIV.8688(WHP), 2004 WL 1119652, at *2 (S.D.N.Y. May 20, 2004) ("A debtor is precluded from asserting any claims post-confirmation that are not preserved in its plan."); *but*, *compare*, this Court's holding in *MF Glob. Holdings Ltd.*, No. 11-15059 (MG), 2017 WL 1373267, at *5 (Bankr. S.D.N.Y. Apr. 13, 2017) ("[T]he plain language of section 1123(b)(3)(B) . . . does not require a plan to specify every claim, instead provid[ing] that the plan may do so. At least where the estate claim in a liquidating Chapter 11 case is not asserted against a creditor of the debtor, and where the claim was not previously adjudicated by the bankruptcy court or another court at or before plan confirmation, res judicata does not bar assertion of the claim.") (Citation and quotation marks omitted.) However, the *MF Global* decision further states that the fact that the defendant was not a creditor, and the claim was never adjudicated, was not dispositive as to whether the claim was barred. *Id.* at *4. Also, the Court noted that the chapter 11 plan's schedules in that case "specifically identified" the defendant's contracts that gave rise to the lawsuit, and this fact, together with the language in the disclosure statement and the chapter 11 plan, could "fairly be read to preserve the claim against" the defendant. *Id*. Those facts are not present here.

held that, for this exception to apply, the reservation must identify with some specificity what claims it intends to preserve and against whom those claims are asserted."); *see also*, *In re SI Restructuring Inc.*, 714 F.3d 860, 864 (5th Cir. 2013) ("For a reservation to be effective, it 'must be specific and unequivocal'—blanket reservations of 'any and all claims' are insufficient."); *see also Browning v. Levy*, 283 F.3d 761, 774 (6th Cir. 2002) ("[A] general reservation of rights [in a plan] does not suffice."); *see also D & K Props. Crystal Lake v. Mut. Life Ins. Co. of New York*, 112 F.3d 257, 261 (7th Cir. 1997) ("A blanket reservation that seeks to reserve all causes of action reserves nothing."); *see also In re Kelley*, 199 B.R. 698, 704-05 (9th Cir. BAP1996) ("[E]ven a blanket reservation by the debtor reserving all causes of action which the debtor may choose to institute has been held insufficient. . . . [I]f the debtor fails to mention the cause of action in either his schedules, disclosure statement, or plan, then he will be precluded from asserting it postconfirmation.") (cleaned up).

46.     The Second Circuit has not squarely addressed this issue,[6] and the issue remains unsettled in district courts within the Second Circuit. Still, this Circuit mostly agrees that a blanket statement *may* be sufficient to preserve all claims for post-confirmation prosecution in certain circumstances. If some specificity is required, it is undoubtedly less than what other circuits require. The difficulty lies in determining in which circumstances a blanket statement is sufficient.

47.     *Goldin Associates* is instructive. In that case, the chapter 11 plan included a general reservation clause. The court said that "the reservation clause in the Plan is a blanket one, and thus

---

[6] In *I. Appel*, Judge Marrero held that a chapter 11 debtor's blanket reservation of rights to pursue post-confirmation claims was sufficient and declined to follow the line of cases that required specific causes of action to be preserved in a plan of reorganization. *In re I. Appel Corp.*, 300 B.R. 564, 568 (S.D.N.Y. 2003). Still, in that case, "[t]he Plan indicated that the Debtor was reserving all causes of action, and the Disclosure Statement indicated that the Debtor was investigating potential claims against [defendants]." *Id.* at 570. The Second Circuit affirmed in a summary order, holding that "[e]ven applying the standard for claims preservation urged by the [defendants] . . . [t]aken as a whole, the bankruptcy court filings adequately disclosed . . . certain claims against the [defendants]. . . . the First Amended Disclosure Plan explicitly stated in the context of its discussion of possible 'claims by the Debtor against [defendant] and his son.'" *In re I. Appel Corp.*, 104 F. App'x 199, 201 (2d Cir. 2004).

- 15 -

insufficient alone to preserve the Debtor's claims[.]" 2004 WL 1119652, at *4. The disclosure statement accompanying the chapter 11 plan, however, detailed "the specific causes of action the debtor was pursuing against both [the defendants] at the time of confirmation." *Id.* The court held that the documents had to be read together and that, therefore, the specific reference to the named defendants in the disclosure statement was sufficient for such claims to be removed from the bar of *res judicata* that would have otherwise barred the debtor after confirmation. Likewise, in *In re Solutia*, this Court explained that "[c]ourts have generally required a sufficient level of specificity in order to retain a claim" and held that because the debtor "had not pointed to any specific references to the [contracts] that would lead the Court to the conclusion that the Debtor intended to preserve the causes of action," there was merit to the argument that the claims were barred. 653 B.R. 99, 124 (Bankr. S.D.N.Y. 2023). In referring to another of its decisions on this same issue, this Court explained that, in *MF Global*, its "conclusion that the claim at issue was sufficiently preserved depended on multiple references to the specific contract at issue throughout the debtor's bankruptcy filings." *Id.* (referring to *MF Glob. Holdings USA Inc. v. Heartland Co-Op*, No. 11-15059 (MG), 2017 WL 1373267 (Bankr. S.D.N.Y. Apr. 13, 2017)).

48.    In the case at bar, the Chapter 11 Plan[7] included a boilerplate reservation of rights, retaining "any and all Causes of Action . . ." Chapter 11 Plan, Art. IV.S. As the court said in *Goldin*, that is "insufficient alone to preserve the Debtor's claims." However, that same sentence continued, "including any actions specifically enumerated in the Schedule of Retained Causes of Action." *Id.* Accordingly, the Court may look at this Schedule in order to try to make effective a general reservation that otherwise would be defective. Significantly, the Schedule enumerated *potential claims against BadgerDAO and Cloudflare, but did not include Mr. Spadafora.* Exhibit A to the

---

[7] *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates (Conformed for MiningCo Transaction)*, dated January 29, 2024 (Dkt. 4289) (the "**Chapter 11 Plan**").

*Seventh Notice of Filing Plan Supplement*, dated October 10, 2023 (Dkt. No. 3869) (the

"**Schedule**"). Thus, following *Goldin*, the Schedule might have been a sufficient basis to allow

Plaintiff to bring a claim against non-party BadgerDAO. Indeed, the Complaint is replete with

allegations against BadgerDAO. Only Plaintiff knows why he substituted Mr. Spadafora for

BagerDAO as a defendant. Because, however, no claims were reserved as against Mr. Spadafora,

the lawsuit is precluded.

49.     Separate and apart from the *Goldin* holding, the Schedule should be read as to

exclude claims against Mr. Spadafora. That is because of the contract interpretation principle of

*expressio unius est exclusio alterius*, *i.e.*, if one thing is specified, other things which may be

thought to be similar to that thing are impliedly excluded. In *Quadrant Structured Prods. Co., Ltd.*

*v. Vertin*, for example, the Delaware Supreme Court certified the following question to the New

York Court of Appeals:

> A trust indenture no-action clause expressly precludes a security holder[,] who fails
> to comply with that clause's preconditions, from initiating any action or proceeding
> upon or under or with respect to 'this Indenture,' but makes no reference to actions
> or proceedings pertaining to 'the Securities.'

> The question is whether, under New York law, the absence of any reference in the
> no-action clause to 'the Securities' precludes enforcement only of contractual
> claims arising under the Indenture, or whether the clause also precludes
> enforcement of all common law and statutory claims that security holders as a group
> may have.

23 N.Y.3d 549 (2014). The court relied on the maxim *expressio unius est exclusio alterius*, holding,

> The clear and unambiguous text of this no-action clause, with its specific reference
> to the indenture, on its face limits the clause to the contract rights recognized by the
> indenture agreement itself. . . . Thus, the clear import of the no-action clause is to
> leave a securityholder free to pursue independent claims involving rights not arising
> from the indenture agreement.

*Id.* at 561. *See also Gurney's Inn Resort & Spa Ltd. v. Benjamin*, 878 F. Supp. 2d 411, 425

(E.D.N.Y. 2012) ("Under the doctrine of *expressio unius est exclusio alterius*, when certain

- 17 -

persons or categories are specified in a contract, an intention to exclude all others may be inferred.")
(citing *IBM Poughkeepsie Employees Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 590 F. Supp.
769, 773 (S.D.N.Y. 1984)).

50. As applied here, the Schedule specifically identified BadgerDAO and Cloudflare as
potential defendants in a claim relating to the December Hack (the only possible basis for claims
against these two parties). Celsius excluded Mr. Spadafora. Thus, under the *expressio unius est
exclusio alterius* maxim, Celsius intended to preserve the right to bring a claim for the December
Hack against BadgerDAO and Cloudflare, but not against Mr. Spadafora.

51. For both these reasons, the claim brought against Mr. Spadafora in the Complaint
must be dismissed, as it was not preserved pursuant to 11 U.S.C. § 1123(b)(3).

**C. The Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted as to Plaintiff's Breach of Fiduciary Duty Claim**

52. The allegations in the Complaint make clear that Plaintiff cannot connect Mr.
Spadafora to the events of the December Hack. Thus, Plaintiff is reduced to trying to create liability
against Mr. Spadafora by arguing that he owed Celsius a fiduciary duty that he allegedly breached.
The Complaint should be dismissed as against Mr. Spadafora (with prejudice) on the additional
ground of failure to state a cause of action because Mr. Spadafora owed no fiduciary duty to Celsius.

***(a) Mr. Spadafora's Relationship with Celsius Was, at Most, a Conventional Business Relationship, Not a Fiduciary One***

53. BadgerDAO is a decentralized autonomous organization. It was not created under
the laws of any country or state. It has no bylaws issued under the laws of any jurisdiction. It has
no principal place of business. It has no officers or directors. Rather, as the Complaint explains,
BagerDAO operates using a "bottom-up governance system, whereby members in possession of
governance tokens can vote on initiatives." Comp. ¶ 35.

54.      An underlying structural flaw in Plaintiff's argument is that Plaintiff does not say

what law is the governing law for determining whether Mr. Spadafora owed Celsius any fiduciary

duty. The Complaint does, however, use a number of sound-bite words found in New York law

cases that discuss fiduciary duties, such as conclusory assertions that a fiduciary relationship arose

from either Mr. Spadafora's "dominant and superior" position at BadgerDAO or the "relationship

of trust" he established with Celsius. Thus, for purposes of this brief, and without prejudice to any

arguments he might have on this issue, Mr. Spadafora will assume that Celsius is basing its claim

under New York law; however, Celsius fails to state a claim thereunder. New York law is clear:

> A [fiduciary] relationship may exist where one party reposes confidence in another
> and reasonably relies on the other's superior expertise or knowledge, *but an arms-length business relationship does not give rise to a fiduciary obligation.*

*Faith Assembly v Titledge of N.Y. Abstract, LLC*, 106 A.D.3d 47, 62 (2d Dep't 2013) (emphasis

added); *see also Gall v. Colon-Sylvain*, 151 A.D.3d 698, 701 (2d Dep't 2017) ("The core of a

fiduciary relationship is a higher level of trust than normally present in the marketplace between

those involved in arm's length business transactions") (citation and quotation marks omitted).

55.      Or, as the Second Circuit recently explained, "[i]n New York, a conventional

business relationship, without more, is insufficient to create a fiduciary relationship. Rather, a

plaintiff must show special circumstances that transformed the parties' business relationship into

a fiduciary one." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 183 (2d Cir. 2023) (citation and quotation

marks omitted). Indeed, the Second Circuit has said that "extraordinary circumstances" are

required to turn an ordinary commercial relationship into a fiduciary relationship: "when parties

deal at arm's length in a commercial transaction, no relation of confidence or trust sufficient to

find the existence of a fiduciary relationship will arise *absent extraordinary circumstances*." *In re

Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002) (emphasis added); *see also Atlantis Info.

Tech. v. CA, Inc.,* 485 F. Supp. 2d 224, 231 (E.D.N.Y. 2007) (same).

56.     Under New York law, a "fiduciary relationship arises between two persons when one of them is under *a duty to act for* or to give guidance for the benefit of another upon matters within the scope of the relation." *Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 592-93 (2012) (citation and quotation marks omitted) (emphasis added).

57.     To the extent that any "relationship" existed between Mr. Spadafora and Celsius, it was, at best, an arm's-length, commercial relationship. There was nothing "extraordinary" about it. Mr. Spadafora had no ability to "act for" Celsius, much less a "duty to act for" Celsius.

58.     Prior to its chapter 11 filing, Celsius was a sophisticated, billion-dollar commercial company. The Complaint demonstrates that Celsius's "relationship" with BadgerDAO and Mr. Spadafora cannot be described as anything other than an arm's-length commercial relationship. Comp. ¶¶ 4, 26. For example, the Complaint acknowledges that Celsius's interest in BadgerDAO was a calculated and strategic business play. The Complaint states that Celsius was connected to BadgerDAO by a mutual friend "as part of its multifaceted investment strategy." *Id.* ¶¶ 45-46. It further alleges that Celsius contemplated for months before making a deposit on BadgerDAO. Specifically, Celsius and Mr. Spadafora, allegedly on behalf of BadgerDAO, participated in business meetings and exchanged correspondence for months before Celsius began to purchase $BADGER tokens and invest in BadgerDAO. *Id.* ¶¶ 46-53. The Complaint also suggests that Celsius has significant experience with similar business transactions, as Celsius invested in a number of "external platforms like—and including—BadgerDAO's DeFi Platform." *Id.* ¶¶ 46-53. The Complaint shows any dealings by Celsius with BadgerDAO or Mr. Spadafora were simply quintessential arm's-length commercial transactions that cannot create a fiduciary obligation. *Pauwels*, 83 F.4th at 183.

59. The parties' alleged business dealings were also nothing special. The Complaint admits that Mr. Spadafora's responsibilities were minor and limited to "daily administration" and "everyday operations." Comp. ¶ 36. The Complaint also claims that Mr. Spadafora attended meetings and was involved in correspondence on behalf of BadgerDAO, such as "[p]roviding updates . . . [and] investment advice," and that he "[a]dvertised . . . new products," and recommended how Celsius could maximize its voting power. *Id.* ¶ 48. None of this is extraordinary. The Complaint even concedes that Mr. Spadafora could not singularly affect "large-scale initiatives," which would have required a vote by members of BadgerDAO. *Id.* ¶ 36. The most that could be said from the Complaint is that Mr. Spadafora was engaged in an ordinary business relationship with Celsius and performed ordinary responsibilities such as customer service, community engagement, and promoting BadgerDAO's products.

60. What the Complaint fails to allege is equally telling. The Complaint does not allege facts to show that Mr. Spadafora was required to act on Celsius's behalf, that Mr. Spadafora and Celsius had a pre-existing or lasting relationship, or that Mr. Spadafora exercised dominance or control over Celsius. Moreover, the Complaint does not show that there was a looming disparity between the parties, such as Mr. Spadafora having direct access to Celsius's capital or confidential information, or that Mr. Spadafora's actions could influence Celsius's investments. Such facts, absent here, are more akin to the extraordinary circumstances that characterize a fiduciary relationship. *See, e.g.*, *Atlantis Info. Tech.*, 485 F. Supp. 2d at 231 (finding that plaintiff had not alleged a special relationship because there was no "obvious disparity" in their conventional business relationship); *see also, e.g.*, *WIT Holding Corp. v. Klein*, 282 A.D.2d 527, 529 (2001) (allegations that the parties socialized and worked closely did not transform a business relationship into a special fiduciary relationship).

- 21 -

### (b)   *Mr. Spadafora Is Not a Fiduciary By Virtue of His Purported Role at BadgerDAO*

61.     DAOs are relatively new vehicles for organization. Nevertheless, a number of states have enacted statutes authorizing DAOs, and they specifically provide that members (such as Mr. Spadafora) do not owe a fiduciary duty to the DAO or to other members (such as Celsius). The Wyoming statute provides as follows:

> Unless otherwise provided for in the articles of organization or operating agreement, no member of a decentralized autonomous organization shall have any fiduciary duty to the organization or any member except that the members shall be subject to the implied contractual covenant of good faith and fair dealing.

Wyo. Stat. Ann. § 17-31-110. Under the Tennessee statute,

> Unless otherwise provided for in the articles of organization or operating agreement, a member of a decentralized organization does not have a fiduciary duty to the organization or another member; except, that the member is subject to the implied contractual covenant of good faith and fair dealing.

Tenn. Code Ann. § 48-250-109.[8]

62.     These statutes make sense. Structurally, DAOs are not beholden to the "principal characteristics of a fiduciary relationship—dependency and influence[.]" *United States v. Chestman*, 947 F.2d 551, 569 (2d Cir. 1991). Rather, as the Complaint admits, they operate using a "bottom-up governance system, whereby members in possession of governance tokens can vote on initiatives." Comp. ¶ 35. When approved by members, the "initiatives are implemented via smart-contracts." *Id.* Smart contracts are "logically coded agreements that dictate decision-making," *i.e.*, are self-executing. *Id.* Transparency is integral across "decentralized finance applications" such as BadgerDAO, as "underlying activity" is permanently recorded "on a [public] blockchain." *Id.* ¶¶ 34-35.

---

[8] In other states, DAOs are permitted to restrict or eliminate fiduciary duties. *See* Vt. Stat. Ann. tit. 11, § 4176 (2017) (Blockchain-Based Limited Liability Companies may eliminate and/or restrict fiduciary duties under Vt. Stat. Ann. tit. 11, § 4003(c)(4) (2015)).

63.     Because of BadgerDAO's structure, Mr. Spadafora's purported position does not give rise to the "four elements that . . . are essential to the establishment of a fiduciary relationship." *Atlantis Info. Tech.*, 485 F. Supp. 2d at 231. Under New York law, these are "(1)[t]he vulnerability of one party to the other which (2) results in the empowerment of the stronger party by the weaker which (3) empowerment has been solicited or accepted by the stronger party and (4) prevents the weaker party from effectively protecting itself." *Id.*

64.     The Complaint makes this evident, touting Celsius as "one of the largest cryptocurrency finance platforms in the world," with "over $10 billion in customer assets," serving about 1.7 million registered users, and "provid[ing] financial services to institutional, corporate, and retail clients across more than 100 countries." Comp. ¶¶ 4, 26. Moreover, by virtue of "purchasing BADGER tokens for the equivalent of $3.5M USD" and its continued investment in BadgerDAO, Celsius obtained substantial $BADGER tokens, which gave it voting power. *Id.* ¶¶ 52-53. It defies reason to think that Celsius did not constitute a powerful voting bloc; indeed, Celsius was one of the largest token holders at the time of the December Hack. Spadafora Decl. ¶ 14 . Alleged communications from Mr. Spadafora regarding "how to vote on community initiatives" illustrate as much. Comp. ¶ 48. Moreover, the Complaint admits that only run of the mill matters, such as "daily administration," could be taken without a member vote. It does not allege that members could not propose initiatives, or that members were prohibited from deciding what was deemed "daily administration," as opposed to a community initiative.

65.     In short, it simply strains credulity to believe that a sophisticated organization such as Celsius, which was responsible for billions of dollars of its customers' assets, and which constituted a powerful voting bloc on BadgerDAO, "was vulnerable," "weak," and "unable to protect itself." To the contrary, because BadgerDAO operated as merely a collection of members

organized around the "use of Bitcoin as collateral," "decentralized finance applications," and "bottom-up governance," principles that characterize the blockchain and crypto community, Celsius had as much power as any other member of BadgerDAO, if not more. The Complaint, accordingly, offers no basis to conclude that Mr. Spadafora's purported role at Celsius gave rise to fiduciary obligations.

66.     Even more damning to Plaintiff's lone cause of action against Mr. Spadafora is the lack of any allegations that would support any type of fiduciary relationship on the issue of security, which is the essence of this lawsuit. Before Celsius made its initial investment in BadgerDAO in February 2021, Celsius may have had[9] a number of conversations with Mr. Spadafora, and it is alleged that, during one, he stated that BadgerDAO had "robust" security. Comp. ¶ 50. That is the extent of specific allegations regarding security prior to when Celsius began purchasing $BADGER tokens.[10] No multi-billion dollar company responsible for investing its customers' assets can seriously contend that its decision to deposit $50 million in Bitcoin in BadgerDAO was based upon this type of statement. The existence of a "fiduciary" relationship would be cheapened to the point of having no meaning if conclusory allegations such as these were sufficient for establishing a fiduciary relationship.

67.     In *Faith Assembly v. Titledge of N.Y. Abstract, LLC*, the Appellate Division reversed the lower court and granted a motion to dismiss a claim for breach of fiduciary duty.

> The complaint alleges in the most conclusory fashion that Stewart owed a fiduciary duty to the plaintiff. No facts are alleged with any particularity from which it could be concluded that Stewart had a duty to act for or give advice for the benefit of the plaintiff, or, indeed, that any type of a relationship of trust existed between them

---

[9] The Complaint is purposely vague on this point. Celsius's first investment in BadgerDAO was in February 2021. Comp. ¶ 52. The Complaint alleges that Mr. Spadafora "had conversations" (without saying how many) "during 2021" (without saying which months). Comp. ¶ 50. Thus, the Complaint does not allege that these conversations took place before Celsius's first investment. Moreover, Mr. Spadafora does not concede the accuracy of these allegations, but simply assumes their correctness for the purposes of the Motion.

[10] The Complaint also alleges that Mr Spadafora sent a single email *after* Celsius's initial investment in which it alleges that Mr. Spadafora said that BadgerDAO "take[s]security VERY VERY seriously." Comp. ¶ 51.

which would give rise to a fiduciary obligation on Stewart's part. In the absence of sufficient factual allegations to indicate the existence of a fiduciary relationship between the plaintiff and Stewart, the allegations of the complaint were insufficient to satisfy the requirements of CPLR 3016 (b).

106 A.D.3d 47, 62 (2d Dep't 2013). The same result should obtain here.

## IV.    CONCLUSION

68.    The Court should dismiss with prejudice the claim against Mr. Spadafora because the Complaint fails to provide any basis to exercise personal jurisdiction over Mr. Spadafora, the claim against Mr. Spadafora is precluded, and the Complaint fails to state a claim upon which relief could be granted.

Dated: October 15, 2024

<div style="margin-left:40%">

*/s/ Debra A. Dandeneau*
Debra A. Dandeneau
David Zaslowsky
Kirsten Dooley
Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: debra.dandeneau@bakermckenzie.com
         david.zaslowsky@bakermckenzie.com
         kirsten.dooley@bakermckenzie.com

*Counsel for Christopher Spadafora*

</div>