**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,<br><br>       Post-Effective Date Debtors. | **NOT FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>(Jointly Administered) |
| MOHSIN Y. MEGHJI, LITIGATION ADMINISTRATOR, AS REPRESENTATIVE FOR THE POST-EFFECTIVE DATE DEBTORS,<br><br>       Plaintiff,<br><br>       v.<br><br>CHRISTOPHER SPADAFORA and CLOUDFLARE, INC.,<br><br>       Defendants. | Adv. Pro. 24-03981 (MG) |

### MEMORANUM OPINION AND ORDER DENYING SPADAFORA MOTION TO DISMISS

*A P P E A R A N C E S:*

Baker & McKenzie LLP
*Counsel for Christopher Spadafora*
452 Fifth Avenue
New York, NY 10018
  By:    Debra A. Dandeneau, Esq.
           David Zaslowsky, Esq.
           Kirsten Dooley, Esq.

WHITE & CASE LLP
*Counsel for the Litigation Administrator*
1221 Avenue of the Americas
New York, NY 10020
  By:    Joshua D. Weedman, Esq,
           Samuel P. Hershey, Esq.
           Renza Demoulin, Esq.

**MARTIN GLENN**
**Chief UNITED STATES BANKRUPTCY JUDGE**

In this adversary proceeding filed by the Celsius Litigation Administrator against two defendants, each has filed a motion to dismiss. This opinion deals solely with the motion filed by individual defendant Christopher Spadafora (the "Motion"). The motion to dismiss by Cloudflare will be disposed of in a separate opinion. Spadafora, a Canadian citizen who resides in Toronto, presses his Motion primarily under Fed. R. Civ. P. 12(b)(2), arguing that the Court does not have personal jurisdiction over him. The only issue concerning personal jurisdiction is whether the complaint sufficiently alleges specific jurisdiction (rather than general jurisdiction).[1]

For the reason explained below, the Motion is **DENIED**.

## I.  BACKGROUND

Christopher Spadafora is one of the founders of BadgerDAO, a decentralized autonomous organization ("DAO") whose stated mission is to "allow its members to use Bitcoin as collateral across decentralized finance." Although domiciled in Canada, Mr. Spadafora solicits and conducts business in the United States. For the reasons discussed below, this Court has specific personal jurisdiction over him because he has minimum contacts with the United States, the causes of action against him relate to his specific conduct directed at Celsius in New York which allegedly resulted in damages of at least $50 million to Celsius. Exercising jurisdiction over Spadafora is reasonable.

---

[1] The Motion includes additional arguments (without much conviction) that the complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6). The Complaint pleads facts properly stating each of those claims. While the facts are disputed, a motion to dismiss is not the proper procedural method of raising and resolving those issues. The Motion also includes an argument that the causes of action against Spadafora were not preserved when the Chapter 11 Plan became effective. That objection is also overruled as the Plan contained a provision retaining jurisdiction that is broad enough to include the claims against Spadafora. *See* ECF Doc. # 4289 (case no. 22-10964) ("Plan"), Art. IV.S (providing that the Litigation Administrator is empowered to "pursue, as appropriate, any and all causes of action, including any actions specifically enumerated in the Schedule of Retained Causes of Action").

2

**A. Mr. Spadafora and BadgerDAO**

Mr. Spadafora is one of the founders of BadgerDAO, a decentralized autonomous organization, and is a Canadian citizen residing in Toronto, Canada. (ECF Doc. #1 ¶ 18.) Mr. Spadafora owns no property, has no bank accounts, and has no business registered in the United States. (ECF Doc. # 5 ¶ 7.) BadgerDAO's mission is to "allow its members to use Bitcoin as collateral across decentralized finance." (ECF Doc. #1 ¶ 34.) Unlike a typical corporation, BadgerDAO does not have a centralized governance structure. Instead, it uses a community governance model, where members possessing a governance token can vote on initiatives via the blockchain. (*Id.* ¶ 36.) While DAO members vote on large-scale initiatives, daily administration, contract negotiation and signing, and communication with users are managed by "the most involved community members like Christopher Spadafora." (*Id.*) Nevertheless, Mr. Spadafora regularly communicated with users through his @badger email account and his X (formerly Twitter) account. (*Id.* ¶ 38.) Additionally, he appeared on several live broadcasts and podcasts to promote BadgerDAO. (*Id.*) Mr. Spadafora served as BadgerDAO's "Senior Community Manager" and was referred to in the press as "operations lead." (*Id.*)

**B. Mr. Spadafora Solicited Celsius to Invest in His Platform**

On January 16, 2021, Arben Kane introduced Mr. Spadafora to the CEO of Celsius, Alexander Mashinsky, via email. (*Id.* ¶ 46.) Subsequently, the two met, and Mr. Spadafora solicited Mr. Mashinsky to invest in BadgerDAO. (*Id.*) Over the following months, Mr. Spadafora communicated with Celsius employees via Telegram, Slack, and over the phone, and provided "updates regarding the advancement of certain BadgerDAO projects, advertising the launch of new BadgerDAO products, providing investment advice to Celsius, and even providing directives to Celsius for how it should organize its assets so it could cast votes in favor of certain

community initiatives on BadgerDAO." (*Id.* ¶ 47–48.)

Mr. Spadafora repeatedly stated that its partnership with Fireblocks could allow BadgerDAO to serve institutional clients and securely store Bitcoin on the platform. (*Id.* ¶ 51.) In reliance on Mr. Spadafora's statements, in February and March 2021, Celsius purchased 3.5M dollars' worth of BADGER tokens and staked those tokens on the BADGER vault and, over the course of several months, placed hundreds of Bitcoins on the platform. (*Id.* ¶ 52.)

On December 2, 2021, hackers stole 900 Bitcoin worth $50 million that Celsius had deposited on BadgerDAO through a phishing scam. (*Id.* ¶ 54.) This hack stemmed from a cybersecurity vulnerability in the security software BadgerDAO used to protect the platform. (*Id.* ¶ 69.) Unbeknownst to Celsius and Mr. Spadafora, BadgerDAO had been relying on Cloudflare's free and least secure security software to safeguard its assets. Following the hack, Mr. Spadafora and his team instituted multi-factor authentication, mandatory password changes, and regular rotation of Cloudflare API keys, which are standard practices for platforms that secure crypto assets. (*Id.*)

## II. LEGAL STANDARD

### A. Complaint

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under this standard, the court must first "accept as true all of the factual allegations set out in the plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *In re Scott*, 572 B.R. 492, 502 (Bankr. S.D.N.Y. 2017). Second, the court must determine if the factual allegations state a plausible claim for relief. *Id.* at 502–503.

4

In bankruptcy, Rule 7004(d) of the Bankruptcy Rules of Procedure permits national service of process. Thus, a bankruptcy court may exercise personal jurisdiction over a defendant served under Rule 7004(d) "if the exercise of jurisdiction is consistent with the Constitution and the laws of the United States." FED. R. BANKR. P. 7004(d). Since valid service of process under Rule 7004(d) "is sufficient to establish personal jurisdiction, state long-arm statutes are inapplicable, and the only remaining inquiry for a bankruptcy court is whether exercising personal jurisdiction over the defendant would be consistent with the Due Process Clause of the Fifth Amendment." *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 619 (Bankr. S.D.N.Y. 2015). Therefore, to determine whether the bankruptcy court has specific jurisdiction over the defendant, the court must ask whether the defendant has minimum contacts with the United States, whether the causes of action sufficiently relate defendant's specific forum conduct, and whether the exercise of jurisdiction would be reasonable. *Id.*

**B. Minimum Contacts**

The defendant must meet two requirements to have minimum contacts with the forum jurisdiction. First, the defendant must "'purposefully direct[]' his activities at forum residents." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citation omitted). In bankruptcy courts, minimum contacts are measured by Fifth Amendment standard of contacts with the United States rather than with the Fourteenth Amendment standard of contacts with the forum. Second, the underlying cause of action must "'arise out of or relate to' those activities." *Id*. (internal citation omitted). The "purposeful availment" prong is satisfied when the defendant's contacts with the forum state (in this case with the United States) "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state." *Id*. at 475 (internal citation omitted). The "arise out of or relates to those activities"

5

prong is satisfied when there is "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). This affiliation may be satisfied when the "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021); *see also Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 592 U.S. 351, 362 (2021) ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do.").

In *Burger King*, Burger King, a Florida corporation, sued a franchise owner domiciled in Michigan for breach of contract claims in Florida court. *Burger King Corp.*, 471 U.S. at 464. The defendants had no physical ties to Florida other than their attendance at a training course held in the state. *Id*. at 479. However, the defendants negotiated with the Miami headquarters regarding the terms of the agreement. *Id*. at 467. Florida's long-arm statute provided that anyone who breached a contract in Florida by failing to perform the acts the contract requires to be performed there, regardless of where they are domiciled, would be subject to the state's jurisdiction. *Id*. at 463. Since the franchise's location was in Michigan, the defendants argued that the state did not have jurisdiction over them because the underlying claims did not arise in Florida. *Id*. at 469. Nevertheless, the Court held that Florida did have jurisdiction over the defendant because the defendant's conduct was targeted at Florida. *Id*. at 487. The defendant "'deliberately reached out beyond' Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation

6

with a nationwide organization." *Id*. at 479.  Upon approval of the contract, the defendant's 20-year contract with Burger King was signed.  *Id*.  Thus, the quality and nature of their relationship with the Florida company is not tenuous, and the defendants could have reasonably foreseen being hailed into Florida court for injuries arising from the breach of contract.  *Id*.

Solicitation in the forum state may be sufficient to show that the defendant purposefully availed themselves of the forum.  In *Ford Motor Co.*, plaintiffs purchased used Ford cars that crashed due to design defects.  *Ford Motor Co.*, 592 U.S. at 356.  Ford did not sell, manufacture, or design the defective cars in the forum state.  *Id*. at 355.  However, Ford advertised, marketed, and sold used parts in the forum state and provided service for the same models the plaintiffs drove in the state.  *Id*.  Ford conceded that it purposefully availed itself of the forum's laws but nevertheless argued that personal jurisdiction should not apply because its conduct did not directly give rise to the plaintiffs' product liability suit in the forum state.  *Id*. at 356.  The court rejected Ford's argument and held that the underlying claim related to the injuries because its systemic solicitation in the forum state created a "strong relationship among the defendant, the forum, and the litigation."  *Id*. at 353.; *see also Keeton v. Hustler Mag., Inc.*, 465 U.S. 770 (1984).

In *Ford Motor Co.*, it is clear from the facts that the defendants reached into the forum and purposefully availed themselves of its laws.  In contrast, in *Walden*, a Georgia DEA agent seized gambling funds from the plaintiffs on their way to Nevada and manipulated affidavits to retain possession of the funds.  *Walden v. Fiore*, 571 U.S. 277, 280–82 (2014).  The plaintiffs sued in their home state of Nevada for the DEA's tortious conduct, but the Court held that Nevada did not have jurisdiction over the defendant because his only connection with the forum state was through his contacts with the plaintiffs.  *Id*. at 285.  The court reasoned that the

defendant's actions did not connect him to the forum because none of the tortious conduct occurred within the forum. *Id*. Since the only connection to the forum was the unilateral activity of the plaintiffs, Nevada did not have jurisdiction over the defendant. *Id*. at 291.

Similarly, in *Bristol-Myers Squibb*, there was a class action suit against Bristol-Myers Squibb ("BMS") due to injuries caused by the drug it developed, Plavix. *Bristol-Myers Squibb Co*, 582 U.S. at 259. The suit involved 86 California residents along with 592 residents from other states. *Id.* BMS did not develop Plavix, create a marketing strategy, manufacture, label, package, or seek regulatory approval for the product in California. *Id*. In contrast to *Ford Motor Co.*, the non-resident defendants were not injured in the forum state. Consequently, since the non-resident plaintiffs' injuries did not arise from or relate to the defendant's activities in the state, the court could not exercise jurisdiction over them. *Id*. at 264–65.

**C. Reasonableness**

After the "minimum contacts" analysis, courts decide if those contacts "may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King Corp.*, 471 U.S. at 476.

The "reasonableness" factors include: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *In re Bernard L. Madoff Inv. Sec. LLC*, 525 B.R. 871, 883 (Bankr. S.D.N.Y. 2015); *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113 (1987). When purposeful availment has been satisfied, the burden shifts to the defendant to present "a 'compelling case' that jurisdiction would be unreasonable under the circumstances."

*In re Bernard L. Madoff Inv. Sec. LLC*, 525 B.R. at 883 (internal citation omitted).

### III. DISCUSSION

#### A. Purposeful Availment

A guiding principle in the above cases and personal jurisdiction jurisprudence is intentional targeting or reaching into the forum. Here, similar to *Burger King*, Mr. Spadafora reached into the United States forum to solicit the CEO and others from Celsius to invest in BadgerDAO. (ECF Doc. #1 ¶ 45.) Subsequently, Mr. Spadafora continued to target the United States forum by maintaining ongoing contact with employees advertising new features and products of BadgerDAO, essentially becoming the point of contact for both BadgerDAO and Celsius. (*Id.* ¶ 48–53.) Much like in *Ford Motor Co.*, Mr. Spadafora purposefully availed himself of advertising and soliciting investment in the United States. In *Ford Motor Co.*, Ford had various advertising schemes throughout multiple states, including "billboards, TV and radio spots, print ads, and direct mail." *Ford Motor Co.*, 592 U.S. at 365. In this case, Mr. Spadafora advertised BadgerDAO's features on YouTube, an American company, and solicited investment from American citizens and companies such as Celsius. (ECF Doc. #1 ¶ 48–53.) Thus, Mr. Spadafora erroneously relies on *Walden* because his connection to the United States was not due to the unilateral activity of the plaintiff but rather Mr. Spadafora's intentional efforts to target the forum. Therefore, Mr. Spadafora purposefully availed himself of the United States.

#### B. Arises Out of or Relates to the Underlying Claim

Mr. Spadafora's solicitations of Celsius relate to the negligence claim because he should have known about (a) industry standards regarding security, (b) that BadgerDAO was not meeting these standards, and (c) solicited millions of dollars in investments from Celsius without knowledge of these basic crucial facts. By serving as the spokesperson for BadgerDAO and

9

handling administrative tasks, Mr. Spadafora positioned himself to know better. (*Id*. ¶ 36–38.) Although Mr. Spadafora did not establish security protocols, as the founder and main point of contact for BadgerDAO, the Plaintiff argues he should have been knowledgeable about BadgerDAO's security measures before soliciting millions of dollars in investments from Celsius. (ECF Doc # 5 ¶ 29.) Further, the Plaintiff argues, Mr. Spadafora had the requisite expertise to know BadgerDAO had security risks as he led the effort to patch the defects. (ECF Doc. #1 ¶ 69.) Mr. Spadafora should have been aware that BadgerDAO utilized Cloudflare's free services to protect assets worth millions instead of opting for Cloudflare's paid services. (ECF Doc. # 21 at 9.) Furthermore, BadgerDAO disregarded industry standards by not implementing multi-factor authentication, frequent password changes, and regular rotation of API keys, which would have made it more difficult for hackers to infiltrate the system. (ECF Doc. #1 ¶ 69.)

Unlike *Bristol Meyers-Squibb*, which the defendant relies on, in this case, the injury occurred in the forum attempting to exercise jurisdiction. The defendant overlooks the principle outlined in *Ford Motor Co*. that it is unnecessary for a defendant's actions to directly give rise to the underlying claim. *Ford Motor Co.*, 592 U.S. at 355. When a defendant systemically serves a market and that product malfunctions, there exists a strong relationship among "the defendant, the forum, and the litigation." *Id.* at 365. While Ford sold cars, Mr. Spadafora sold BadgerDAO's services. (ECF Doc #1 at ¶ 48–53.) Thus, Mr. Spadafora, along with the other members of the DAO, should have known about BadgerDAO's defect in its security. As a result of this oversight, BadgerDAO was hacked, leading to Celsius losing millions. Therefore, Mr. Spadafora's continuous solicitation of Celsius in the United States, despite claiming that he was unaware of the platform's security defects, relates to the underlying negligence claim and

establishes the necessary connection between the defendant, the forum, and the litigation.

### C. It Is Reasonable to Exercise Jurisdiction Over Mr. Spadafora

1. There Is No Undue Burden on Mr. Spadafora from this Court's Exercise of Jurisdiction

Mr. Spadafora contends that it would be unduly burdensome to bring him into court because he is a Canadian citizen. (ECF Doc # 5 ¶ 38.) However, being a foreign citizen does not make litigation in the United States per se unreasonable. *See Fairfield Sentry Ltd. v. Merrill Lynch Int'l (In re Fairfield Sentry Ltd.)*, 657 B.R. 362, 381 (Bankr. S.D.N.Y. 2024) ("Even if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago."). In that case, the court held that travel-related burdens are a minimal factor in this court's analysis. *Id.* Further, as the Plaintiff points out in his opposition brief, over the course of the Celsius bankruptcy, this Court has accommodated litigants from all over the world. (ECF Doc. # 17 ¶ 17.) Therefore, it would not cause an undue burden on Mr. Spadafora to litigate this matter in the United States.

2. The Plaintiff's Interest in Obtaining Convenient and Effective Relief

Here, the defendant concedes that the litigation administrator is interested in adjudicating recovery in the U.S., but defendant argues that he does not have an interest in this case because the defendant has no connection to the claims at issue. (ECF Doc. # 5 ¶ 39.) The Court disagrees.

The Complaint alleges that Spadafora should have known (a) the industry standards, (b) that BadgerDAO was not meeting those standards, and (c) solicited millions of dollars in investments from Celsius while ignoring these crucial facts.

### 3. The Interests of the Forum State in Adjudicating the Case

It would be most efficient to litigate this case in this Court because it presides over the bulk of the Celsius litigation.

### 4. The Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of the Controversy

As mentioned earlier, the Celsius litigation has been ongoing in this Court since 2022. Thus, the judicial system is interested in resolving this case in the United States.

### 5. The Shared Interest of the States in Furthering Substantive Social Policies

The defendant concedes that there are no social policies applicable to this case. (*Id.* ¶ 42.) Therefore, the defendant has failed to demonstrate that litigation in the United States would be unreasonable.

## IV. CONCLUSION

For the reasons discussed above, the Court concludes that Mr. Spadafora is subject to personal jurisdiction in this Court for the claims asserted in the Complaint. The Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated:   April 28, 2025
         New York, New York

                                              *Martin Glenn*
                                        MARTIN GLENN
                                  Chief United States Bankruptcy Judge