**WHITE & CASE LLP**
Joshua D. Weedman
Samuel P. Hershey
Renza Demoulin
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

*Counsel to the Litigation Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*, | § § | Case No. 22-10964 (MG) |
| Post-Effective Date Debtors.[1] | § § § § | (Jointly Administered) |
| MOHSIN Y. MEGHJI, LITIGATION ADMINISTRATOR, AS REPRESENTATIVE FOR THE POST-EFFECTIVE DATE DEBTORS, | § § § § § § | Adv. Proc. No.  24-03981 (MG) |
| Plaintiff, | § § | |
| v. | § § | |
| CHRISTOPHER SPADAFORA and CLOUDFLARE, INC., | § § § | |
| Defendants. | § § | |

---

[1] The "**Post-Effective Date Debtors**" and prior to the Petition Date (as defined below), the "**Debtors**" in these chapter 11 cases (the "**Chapter 11 Cases**"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450) (collectively, "**Celsius**").  The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these Chapter 11 Cases is 1209 Orange Street, Wilmington, Delaware 19801.

| | |
|---|---|
| CLOUDFLARE, INC., | § |
| | § |
| Third-Party Plaintiff, | § |
| | § |
| v. | § |
| | § |
| BADGERDAO and JOHN DOES 1 through 10, | § |
| | § |
| | § |
| Third-Party Defendants. | § |
| | § |

## MEMORANDUM OF LAW IN SUPPORT OF MOHSIN Y. MEGHJI'S MOTION TO DISMISS DEFENDANT CLOUDFLARE, INC.'S COUNTERCLAIMS, AND FOR CONTEMPT AND SANCTIONS

**TABLE OF CONTENTS**

Page

**PRELIMINARY STATEMENT** ..................................................................................................1

**FACTUAL BACKGROUND**....................................................................................................**4**

      A.      BadgerDAO ..................................................................................................... 4

      B.      Celsius Invests In BadgerDAO................................................................... 4

      C.      Cloudflare Provides Security Services To BadgerDAO............................ 4

      D.      Cloudflare's Services Are Grossly Deficient And BadgerDAO Is
            Hacked ........................................................................................................... 5

      E.      Celsius Files For Bankruptcy And Rejects Any Agreements That Were
            Not Expressly Assumed............................................................................... 6

      F.      The Litigation Is Filed And Cloudflare Asserts Counterclaims ................ 9

      G.      Cloudflare Refuses To Withdraw Its Counterclaims And Knowingly
            Continues To Violate The Discharge Injunction ..................................... 10

**LEGAL STANDARD** ...........................................................................................................**10**

**ARGUMENT**.........................................................................................................................**11**

      I.      **CLOUDFLARE CANNOT SUE THE LITIGATION ADMINISTRATOR
            OR THE POST-EFFECTIVE DATE DEBTORS FOR PURPORTED
            PRE-PETITION CLAIMS**.........................................................................**11**

      A.      Neither The Litigation Administrator Nor The Post-Effective Date
            Debtors Can Be Sued For Purported Claims Against Pre-Petition
            Celsius.......................................................................................................... 12

      B.      Purported Indemnification Obligations Are Pre-Petition Claims That
            Have Been Discharged Under The Plan ..................................................... 13

      II.      **THE POST-EFFECTIVE DATE DEBTORS ARE NOT CURRENT
            PARTNERS OF BADGERDAO AND HAVE NO OBLIGATIONS
            UNDER THE SUBSCRIPTION AGREEMENT**.........................................**17**

      III.      **CLOUDFLARE CANNOT SUE ONLY SOME, BUT NOT ALL,
            BADGERDAO PARTNERS**....................................................................**19**

      IV.      **CLOUDFLARE'S POTENTIAL LIABILITY IS NOT COVERED BY
            THE INDEMNIFICATION AGREEMENT**............................................**21**

      A.      First-Party Claims Are Not Subject To Indemnification ........................ 22

      B.      Gross Negligence Claims Are Not Subject To Indemnification............... 25

C.    Cloudflare's Indemnification Request Is Premature.................................. 26

**V.     THIS COURT SHOULD GRANT SANCTIONS FOR CLOUDFLARE'S
KNOWING VIOLATION OF THE DISCHARGE INJUNCTION ...............26**

**CONCLUSION .....................................................................................................28**

**CERTIFICATE OF SERVICE ...........................................................................30**

## TABLE OF AUTHORITIES

## CASES

*AGK Sierra De Montserrat, L.P. v. Comerica Bank*,
  109 F.4th 1132 (9th Cir. 2024) ...................................................................................................23

*Agra v. Dolci (In re Major Modem Mgmt. Inc.)*,
  No. 22-10169 (MG), Adv. Pro. No. 23-1135 (MG), 2023 WL 5338580, at *4, *10 (Bankr.
  S.D.N.Y. Aug. 18, 2023) ............................................................................................................11

*Alki Partners, LP v. DB Fund Servs., LLC*,
  209 Cal. Rptr. 3d 151 (Cal. Ct. App. 2016)
  ...............................................................................................................................22, 23, 24, 25

*Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*,
  No. 11-civ-2232 (NRB), 2011 WL 4965150 (S.D.N.Y. Oct. 19, 2011)............................14, 16

*Am. First Fin. LLC v. Garcia*,
  No. 1:23-CV-00117-KES-EPG, 2025 WL 418686 (E.D. Cal. Feb. 6, 2025).........................23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................................10

*Audra Karim v. Sec. Bldg. Loft Partner L.P*,
  No. 24STCV06491, 2024 Cal. Super. LEXIS 57815 (Cal. Super. Ct. Dec. 4, 2024) .............24

*Bank Julius Baer & Co. Ltd. v. Kopple*,
  No. 90 Civ. 3186 (TPG), 1992 WL 88135 (S.D.N.Y. Apr. 22, 1992)....................................20

*Beltrone v. Gen. Schuyler & Co.*,
  223 A.D.2d 938 (3d Dep't 1996)...............................................................................................20

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
  778 F. Supp. 2d 375, 408 (S.D.N.Y. 2011)...............................................................................19

*City of Bell v. Superior Ct.*,
  163 Cal. Rptr. 3d 90 (Cal. Ct. App. 2013)....................................................................22, 23, 24

*City of Santa Barbara v. Super. Ct.*,
  41 Cal. 4th 747 (Cal. 2007)........................................................................................................25

*Conway Hosp. Inc. v. Lehman Bros. Holdings Inc.*,
  531 B.R. 339 (S.D.N.Y. 2015)...................................................................................................16

*Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*,
  540 F.3d 351 (5th Cir. 2008) .....................................................................................................13

*Eastern Metals Corp. v. Martin*,
   191 F. Supp. 245 (S.D.N.Y. 1960) ...................................................................19, 21

*FDIC v. Shea & Gould*,
   No. 95 CIV. 5491 (JFK), 1997 WL 401822 (S.D.N.Y. July 17, 1997) .......................19, 20, 21

*Grebing v. 24 Hour Fitness USA, Inc.*,
   234 Cal. App. 4th 631 (Cal. App. Ct. 2015) ...........................................................26

*Harborview Capital Partners v. Solomon Invs.*,
   No. 651385/2019, 2020 N.Y. Misc. LEXIS 9862 (N.Y. Sup. Ct. Oct. 6, 2020) ..............20, 21

*Houbigant, Inc. v. ACB Mercantile (In re Houbigant, Inc.)*,
   188 B.R. 347 (Bankr. S.D.N.Y. 1995)................................................................11, 14

*In re Anderson*,
   884 F.3d 382 (2d Cir. 2018)...........................................................................27

*In re Avianca Holdings S.A.*,
   618 B.R. 684 (Bankr. S.D.N.Y. 2020)..................................................................18

*In re Century/ML Cable Venture*,
   294 B.R. 9 (Bankr. S.D.N.Y. 2003)....................................................................18

*In re DiBattista*,
   615 B.R. 31 (S.D.N.Y. 2020)...........................................................................27

*In re Granite Partners, L.P.*,
   210 B.R. 508 (Bankr. S.D.N.Y. 1997).................................................................11

*In re Heafitz*,
   85 B.R. 274 (Bankr. S.D.N.Y. 1988)...................................................................18

*In re Lehman Bros. Holdings Inc.*,
   No. 08-13555 (JMP), 2013 WL 6283572 (Bankr. S.D.N.Y. Dec. 3, 2013) ....................27, 28

*In re Nine West LBO Sec. Litig.*,
   505 F. Supp. 3d 292 (S.D.N.Y. 2020)..................................................................12

*In re Residential Capital LLC*,
   558 B.R. 77, 85 (S.D.N.Y. 2016)......................................................................16

*In re Schick*,
   235 B.R. 318 (Bankr. S.D.N.Y. 1999).................................................................18

*In re St. Casimir Dev. Corp.*,
   358 B.R. 24 (S.D.N.Y. 2007)...........................................................................18

iv

*In re Trans-Action Com. Invs., Ltd.*, No. 97-46121 T,
    2002 WL 32341923, at \*14 (Bankr. N.D. Cal. June 28, 2002) ..............................................25

*Jackson Nat. Life Ins. Co. v. Workman Sec. Corp.*,
    803 F. Supp. 2d 1006 (D. Minn. 2011) ..............................................................................19

*Lepire v. Analytics*,
    No. 30-2017-00896413-CU-WT-NJC, 2018 Cal. Super. LEXIS 64623 (Cal. Super. Ct. June
    4, 2018) ..............................................................................................................................26

*Lesly v. Schmuel*,
    No. 21STCV33639, 2025 Cal. Super. LEXIS 22152 (Cal. Super. Ct. June 9, 2025) ..............23

*Meghji v. Bailey (In re Celsius Network LLC)*,
    669 B.R. 283 (Bankr. S.D.N.Y. 2025) ..............................................................................11

*Metcalf v. Golden*,
    488 F.3d 836 (9th Cir. 2007) ..............................................................................................13

*Myers Bldg. Indus., Ltd. v. Interface Tech., Inc.*,
    17 Cal. Rptr. 2d 242 (Cal. Ct. App. 1993) ........................................................................24

*Off. Comm. of Unsecured Creditors of Lois/USA, Inc. v. Conseco Fin. Servicing Corp. (In re
    Lois/USA, Inc.)*,
    264 B.R. 69 (Bankr. S.D.N.Y. 2001) ..................................................................................11

*Olin Corp. v. Riverwood Int'l (In re Manville Forest Prods., Corp.)*,
    209 F.3d 125 (2d Cir. 2000) ................................................................................................14

*Owen Steel Co., Inc. v. George A. Fuller Co.*,
    563 F. Supp. 298 (S.D.N.Y. 1983) ..............................................................................19, 20

*P.A. Props. v. B.S. Moss' Criterion Ctr. Corp.*,
    No. 02 Civ. 4900 (LTS) (THK), 2004 WL 2979984 (S.D.N.Y. Dec. 23, 2004) .........14, 15, 16

*Per-Pap LLC v. OS Pac. LLC*,
    2023 WL 10675334 (C.D. Cal. Nov. 29, 2023) ....................................................................26

*Raymond James & Assocs. v. Jalbert (In re German Pellets La.), LLC*,
    91 F.4th 802 (5th Cir. 2024) ..............................................................................12, 13, 14

*Richmond Am. Homes of Ariz., Inc. v. Uponor Wirsbo, Inc.*,
    No. CV-12-00610-PHX-ROS, 2012 WL 12941130 (D. Ariz. Dec. 12, 2012) ........................19

*Saugatuck, LLC v. St. Mary's Commons Assocs., L.L.C.*,
    No. 19-cv-217 (SIL), 2024 WL 4107247 (E.D.N.Y. Sept. 5, 2024) ....................................20

v

*Sealink Funding Ltd. v. Deutsche Bank AG (In re Residential Capital LLC)*,
    489 B.R. 36 (Bankr. S.D.N.Y. 2013) ..................................................................14

*Segner v. Admiral Ins. Co. (In re Palmaz Sci., Inc.)*,
    No. 16-50552-CAG, 2018 WL 3343597 (Bankr. W.D. Tex. June 4, 2018) ...........13

*Seirafi v. City of Riverside*,
    No. 5:19-cv-02054-CAS-KKx, 2022 WL 1843226 (C.D. Cal. Mar. 29, 2022) ......24

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d. Cir. 2008).................................................................................11

*Taggart v. Lorenzen*,
    587 U.S. 554 (2019)...............................................................................................27

*Thart v. Colliers Int'l Grp. Inc.*,
    No. 2:24-CV-10876-CV (EX), 2025 WL 1356943 (C.D. Cal. Apr. 8, 2025) ...22, 25

*Thomas v. Real*,
    No. 21STCV31353, 2022 Cal. Super. LEXIS 11776 (Cal. Super. Ct. Mar. 15, 2022) ...........25

*Total Mgmt. Servs. Am., Inc. v. E-Shop Labo LLC*,
    No. 22STCV13261, 2024 WL 4380936 (Cal. Super. Ct. Aug. 28, 2024)...........22, 25, 26

*U.S. Trust Co. v. Bamco 18,*
    183 A.D.2d 549 (1st Dep't 1992) ......................................................................20, 21

*United States v. Bond*,
    762 F.3d 255 (2d Cir. 2014)....................................................................................12

*Westchester Fire Ins. Co. v Schorsch*,
    186 A.D.3d 132 (1st Dep't 2020) ............................................................................13

**STATUTES AND RULES**

11 U.S.C. § 105(a) ........................................................................................................27

11 U.S.C. § 365..............................................................................................................2

11 U.S.C. § 524(a)(2)....................................................................................................27

11 U.S.C. § 1123(b) ........................................................................................................9

Cal Civ. Code § 1668....................................................................................................25

Fed. R. Bankr. P. 3003(c)(2)........................................................................................15

Fed. R. Bankr. P. 7012 .................................................................................................10

Fed. R. Civ. P. 12(b)(6)..................................................................................................10

N.Y. P'ship Law § 62(5)...............................................................................................18

**MISCELLANEOUS**

Jeffrey Sharer, *Noncompetition Agreements in Bankruptcy: Covenants (Maybe) Not to Compete*,
62 U. Chi. L. Rev. 1549, 1554 n.25 (1995) ............................................................15

Mohsin Y. Meghji, the Litigation Administrator of Celsius Network LLC and its affiliated Post-Effective Date Debtors ("**Litigation Administrator**" or "**Plaintiff**"), respectfully submits this Memorandum of Law in support of Plaintiff's motion to dismiss Defendant Cloudflare Inc.'s ("**Defendant**" or "**Cloudflare**") counterclaims against Plaintiff included in Cloudflare's Answer, Affirmative Defenses, Counterclaims, and Crossclaims [ECF No. 42][2] (the "**Counterclaims**"), and motion for contempt and sanctions (the "**Motion**").

## PRELIMINARY STATEMENT

This lawsuit seeks to remedy Cloudflare's negligence in allowing cyberhackers to unlawfully access BadgerDAO's platform where Celsius stored cryptocurrency. Cloudflare's negligence led to the theft of tens of millions of dollars' worth of Celsius's Bitcoin, the value of which Plaintiff now seeks to recover for the benefit of Celsius's former creditors.

After several unsuccessful attempts to dismiss this action, Cloudflare now seeks to delay the case further—and in the process force the Debtors' estates to waste resources—by filing baseless counterclaims against the Post-Effective Date Debtors and the Litigation Administrator. Relying on an indemnification provision contained in a 2021 contract between BadgerDAO and Cloudflare, Cloudflare seeks an absurd result, demanding that Plaintiff—the Litigation Administrator of the Debtors' estates—indemnify it for the very losses that Plaintiff seeks to recover through this action. Cloudflare's attempt to evade its responsibility by bringing untimely and unpreserved claims against the Litigation Administrator and the Post-Effective Date Debtors improperly violates this Court's discharge and injunctive order and is, in any event, completely baseless.

---

[2] Unless otherwise specified, all "ECF" numbers refer to the above-captioned adversary proceeding, No. 24-03981 (MG), and all "Bankr. ECF" numbers refer to the above-captioned Chapter 11 Cases (Case No. 22-10964 (MG)).

*First*, Cloudflare cannot sue the Litigation Administrator or the Post-Effective Date Debtors for pre-petition claims it believes it has against Celsius. The Counterclaims are based on Cloudflare's assertion that a 2021 contract between Cloudflare and BadgerDAO somehow creates an indemnity obligation for the Litigation Administrator and the Post-Effective Date Debtors *today*. But neither the Litigation Administrator nor the Post-Effective Date Debtors were or are a party to any contract with BadgerDAO or Cloudflare, and neither can be sued for any claims that Cloudflare erroneously believes that it has against Celsius or the Debtors. In fact, this Court's order confirming the Debtors' bankruptcy plan expressly discharged any potential claims against the Debtors that were not timely filed, and enjoined any entity from commencing any action pertaining to any purported claims against the Debtors after the Effective Date. Cloudflare never filed a proof of claim, and in any event cannot use this adversary proceeding to circumvent the bankruptcy process by asserting pre-petition claims against the entity formerly known as Celsius.

*Second*, the fundamental premise of the Counterclaims—that the Litigation Administrator and the Post-Effective Date Debtors are bound by the terms of any agreement entered into by BadgerDAO—is wrong. While Celsius had a relationship with BadgerDAO, neither the Litigation Administrator nor the Post-Effective Date Debtors are current partners of BadgerDAO or parties to the contract between BadgerDAO and Cloudflare which allegedly imposes indemnification obligations. This is because all of Celsius's partnerships, including Celsius's partnership in BadgerDAO, were dissolved when the Debtors filed for bankruptcy on July 13, 2022. And even if Celsius's partnership with BadgerDAO still existed post-petition, Celsius exercised its right to reject all obligations it had under pre-petition executory contracts under section 365 of the Bankruptcy Code, which would include any BadgerDAO partnership agreement and, if applicable, the contract between BadgerDAO and Cloudflare on which Cloudflare bases its Counterclaims.

2

*Third*, even assuming *arguendo* that Cloudflare could sue the Post- Effective Date Debtors through the Litigation Administrator for pre-petition claims against Celsius, and even assuming *arguendo* that the Litigation Administrator and the Post-Effective Date Debtors are bound by obligations in the contract between BadgerDAO and Cloudflare—assumptions that Plaintiff disputes—Cloudflare is not permitted to pursue a breach of contract claim against only a subset of BadgerDAO's individual partners.  To sue only some individual partners, Cloudflare would need to either allege that BadgerDAO's assets are inaccessible or insufficient.  Cloudflare's only alternative is to join all BadgerDAO's alleged individual partners *together* with BadgerDAO. Cloudflare has failed to do either.

*Fourth,* notwithstanding the fatal deficiencies discussed *supra*, Cloudflare's underlying claim for indemnification lacks merit.  This is because under well-established law, the relevant contract's indemnification provision only covers third-party claims, but Cloudflare here seeks indemnification from claims brought by a former partner of the direct counterparty to the contract.

*Finally*, Plaintiff's claims against Cloudflare include a claim for gross negligence, which cannot be subject to indemnification.  And, in any event, Cloudflare's indemnification request would be, at best, premature, as a contractual indemnity claim cannot be ripe until liability has been determined.

For the foregoing reasons, and as set forth more fully below, the Counterclaims lack merit and should be dismissed.  Additionally, Plaintiff respectfully submits that Cloudflare's insistence on pursuing these baseless claims violates this Court's discharge and injunction order, warranting sanctions.

## FACTUAL BACKGROUND

### A.      BadgerDAO

BadgerDAO is what is known as a Decentralized Autonomous Organization ("**DAO**"), which is a cryptocurrency platform where users may deposit and earn yield on Bitcoin assets. Complaint [ECF No. 1] ("**Compl.**"), ¶¶ 34, 39.  BadgerDAO provides for a bottom-up governance system, whereby members in possession of governance tokens can vote on initiatives via the blockchain.  *Id.* ¶ 35.  If approved, those initiatives are implemented via smart-contracts, which are logically-coded agreements that dictate decision-making based on underlying activity on a blockchain.  *Id.*

### B.      Celsius Invests In BadgerDAO

Before filing for bankruptcy in 2022, Celsius was one of the largest cryptocurrency finance platforms in the world, providing financial services to institutional, corporate, and retail clients across more than 100 countries.  *Id.* ¶ 26.  In early 2021, as part of its multi-faceted investment strategy, Celsius began to invest its customers' cryptocurrency deposits through external platforms like—and including—BadgerDAO's platform.  *Id.* ¶ 45.  At or around the same time, Celsius also purchased Badger tokens, the cryptocurrency token allowing token holders to vote on BadgerDAO's governance initiatives.  *Id.* ¶ 52.

### C.      Cloudflare Provides Security Services To BadgerDAO

Cloudflare is a leading, publicly-traded, connectivity cloud company that provides various web-based performance and security enhancement services.  *Id.* ¶ 7.  BadgerDAO outsourced a significant portion of its platform's security to Cloudflare.  *Id.*  Specifically, BadgerDAO contracted with Cloudflare to secure access to its Application Programing Interface (the "**API**"), the developer-end of the Badger application and a critical piece of the BadgerDAO infrastructure.  *Id.* ¶¶ 40–41.  BadgerDAO developers could only access the BadgerDAO API by entering a

4

passphrase or key (the "**API key**"), which Cloudflare was supposed to keep secure and issue for

BadgerDAO developers only.  *Id.* ¶ 41.

The provision of Cloudflare's services to BadgerDAO was governed by a Self-Serve

Subscription Agreement (the "**Subscription Agreement**").  *See* ECF No. 42-1.  Relevant to the

Motion is the Subscription Agreement's indemnification provision, *id.* at § 10.2 (the

"**Indemnification Provision**"), which provides that:

> You agree that you will be responsible for your use of the Service, and you agree
> to defend, indemnify, and hold harmless Cloudflare and its officers, directors,
> employees, consultants, Affiliates (as defined above), subsidiaries and agents
> (collectively, the "Cloudflare Entities") from and against any and all claims,
> liabilities, damages, losses, and expenses, including reasonable attorneys' fees and
> costs, arising out of or in any way connected with your access to, use of, or alleged
> use of the Service; (ii) your violation of this Agreement or any representation,
> warranty, or agreements referenced herein, or any applicable law or regulation; (iii)
> your violation of any third-party right, including without limitation any intellectual
> property right, publicity, confidentiality, property or privacy right; or (iv) any
> disputes or issues between you and any third party. We reserve the right, at our own
> expense, to assume the exclusive defense and control of any matter otherwise
> subject to indemnification by you (and without limiting your indemnification
> obligations with respect to such matter), and in such case, you agree to cooperate
> with our defense of such claim.

*Id.*[3]

### D.     Cloudflare's Services Are Grossly Deficient And BadgerDAO Is Hacked

In late September 2021, flaws in Cloudflare's systems allowed unverified and unauthorized

users to view Cloudflare's client's—including BadgerDAO's—API keys.  Compl. ¶ 60.  Several

of Cloudflare's clients had uncovered the problems with Cloudflare's product early on, and

publicly notified Cloudflare of the problem on customer support forums, warning Cloudflare that

---

[3] The Counterclaims' factual background cites to other sections of the Subscription Agreement.  *See* Counterclaims
¶¶ 40–42, 45–46, 47–48, 49–50 (confidentiality of credentials clause, limitation of liability clause, disclaimer of
warranties).  While the Counterclaims incorrectly summarize these sections' effect on Cloudflare's ultimate liability,
*id.*, Plaintiff need not address these sections in the Motion because they do not form the legal basis of any of the
Counterclaims, which all rely on the Indemnification Provision.  *Id.* ¶¶ 66–97.

they were experiencing hack attempts.  For example, one user observed several months before the hack: "there is a huge difference between someone creating an account on accident [with an] incorrect email address [as opposed to] when someone can use your email address to register and apparently login to create API token. That's not a mistake, that's an [sic] hack attempt." *Id.* ¶ 62. That same user continued: "[s]o Cloudflare can and really should do something about this. Email validation should be mandatory before an account gets created at all." *Id.*  A different user echoed this concern: "I am here because two people in our company have received this [fraudulent verification] email, me being one of them. I think the angle the attackers are going for here is to create the account and add the API keys, and then wait and hope that the email owner clicks that verification link. If they do, then those API keys can be used to make API calls and carry out malicious activity. . . .   CloudFlare, FIX THIS NOW. This is a bug in your system. The account should not be active until the user is verified. This is a serious security issue that is obviously a viable attack metric as it is being used more and more by attackers. FIX THIS NOW." *Id.* ¶ 63.

Despite these public warnings, Cloudflare did not address the issue for several days and never contacted its customers to warn them that their accounts may have been compromised. *Id.* ¶ 64.  Consequently, on December 2, 2021, a hacker exploited this known vulnerability to steal hundreds of millions of dollars in cryptocurrency assets from the BadgerDAO platform, including approximately 900 Bitcoin belonging to Celsius. *Id.* ¶¶ 54–56.  Those Bitcoins today have a value of nearly US$100 million.

E.    **Celsius Files For Bankruptcy And Rejects Any Agreements That Were Not Expressly Assumed**

On July 13, 2022 (the "**Petition Date**"), Celsius filed the Chapter 11 Cases.  The final bar date to file a proof of claim in the Chapter 11 Cases was August 2, 2023.  *Disclosure Statement*

6

*for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Bankr. ECF No. 3332], VII.H.

On January 29, 2023, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates (Conformed for Miningco Transaction)* [Bankr. ECF No. 4289] (the "**Plan**"), which provided that all of the Debtor's pre-petition executory contracts that were not otherwise expressly assumed were deemed rejected. Specifically, the Plan provided that "all Executory Contracts … shall be deemed rejected by the Debtors or Post-Effective Date Debtors, as applicable, without the need for any further notice[.]" *Id.* at Art. V.A.  Any party to a contract rejected under the Plan could file a proof of claim for a general unsecured claim.  *Id.* at Art. V.B.  ("All Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim.").

The Plan also set a separate bar date of March 1, 2024 for rejection damages:

> [A]ll Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Solicitation Agent and served on Debtors or the Post-Effective Date Debtors, as applicable, no later than thirty (30) days after the effective date of such rejection.

> Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Solicitation Agent within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Post-Effective Date Debtors, their Estates, or their property, without the need for any objection by the Debtors or Post-Effective Date Debtors or any further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article VIII.F of the Plan, notwithstanding anything in a Proof of Claim to the contrary.

*Id*.

The Plan also included a permanent discharge injunction (the "**Discharge Injunction**") which discharged any potential claims against Celsius and enjoined any future action or claims against the Debtors:

> [A]ll entities that have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against … the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests[.]

*Id.*, Art. VIII.F.  The Plan further stated that the "Post Effective Date Debtors shall have no liability on account of any Claims or Interests except as set forth herein [in the Plan] and in the Plan Administrator Agreement." *Id.*, Art. IV.K.5. Cloudflare did not file a proof of claim in connection with any alleged rejection damages claim, contingent pre-petition indemnification right, or otherwise.  Cloudflare also did not object to the confirmation of the Plan.

On November 9, 2023, this Court confirmed the Plan. *See Findings of Fact, Conclusions of Law, and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and its Debtor Affiliates* [Bankr. ECF No. 3972] (the "**Confirmation Order**").  The Debtors exited bankruptcy on January 31, 2024 (the "**Effective Date**").  Since the Effective Date, the Post-Effective Date Debtors' only purpose has been to execute the Plan and Confirmation Order, including by winding down the Debtors' estates. *See* Plan, Art. IV.K.4.  As part of these efforts, the Post-Effective Date Debtors sold all remaining interests in non-liquid cryptocurrencies, including any Badger tokens.

8

**F.     The Litigation Is Filed And Cloudflare Asserts Counterclaims**

Under the Plan, Plaintiff was appointed as Litigation Administrator as a representative of the Debtors' estates under section 1123(b) of the Bankruptcy Code for the benefit of certain holders of claims to prosecute, settle, or otherwise resolve certain remaining disputed claims set forth in the Plan.  *See* Plan, Art. IV.L; Confirmation Order, ¶ 298; *Third Notice of Filing of Plan Supplement* [Bankr. ECF No. 3444, Ex. E].  To that end, on July 12, 2024, Plaintiff, in his capacity as Litigation Administrator, filed the above-captioned action against Cloudflare for common law negligence and gross negligence.  Compl. ¶¶ 80–94.  On October 15, 2024, Cloudflare filed a motion to dismiss Plaintiff's claims.  [ECF No. 8].  When this Court denied its motion to dismiss, Cloudflare requested leave to file an interlocutory appeal.  The District Court denied leave to appeal on June 25, 2025.  *Order Denying Motion for Leave to Appeal*, [Case No. 1:25-cv-04444-LAK, Dkt. No. 5].

On June 25, 2025, relying on the Subscription Agreement's Indemnification Provision, Cloudflare sent the Litigation Administrator a letter requesting indemnification in connection with this lawsuit.  **Exhibit 1**, *June 25 Letter from Cloudflare Demanding Indemnification* (the "**June 25 Letter**") at 2.  The June 25 Letter alleged that the Post-Effective Date Debtors, as governing members and general partners of BadgerDAO, were bound by the Subscription Agreement between Cloudflare and BadgerDAO.  *Id.*  On that basis, the June 25 Letter sought indemnification from the Litigation Administrator for his claims against Cloudflare in the above-captioned action.

On July 21, 2025, Cloudflare answered the Complaint and filed counterclaims, making the same demand for indemnification described in the June 25 Letter.  Counterclaims ¶¶ 36–37.  In the Counterclaims, Cloudflare argues that, by virtue of Celsius's membership in BadgerDAO in 2021, the Post-Effective Date Debtors are somehow bound by the 2021 Subscription Agreement

between BadgerDAO and Cloudflare.  Counterclaims ¶¶ 7−9, 37, 63, 70, 79, 91.  Cloudflare contends that the Subscription Agreement requires BadgerDAO's general partners to indemnify and hold harmless Cloudflare for any liability or damages resulting from their use of Cloudflare's services or any disputes between Cloudflare and one of BadgerDAO's general partners. Cloudflare consequently demands that the Post-Effective Date Debtors indemnify it, claiming that the Post-Effective Date Debtors breached and anticipatorily repudiated the Indemnification Provision.  Counterclaims ¶¶ 66−86.  Cloudflare also seeks a declaratory judgment that the Post-Effective Date Debtors are bound by the Indemnification Provision.  Counterclaims ¶¶ 87−97.

**G.      Cloudflare Refuses To Withdraw Its Counterclaims And Knowingly Continues To Violate The Discharge Injunction**

In a letter dated September 5, 2025, Plaintiff notified Cloudflare that the Counterclaims are in direct contravention of the Discharge Injunction, and could subject Cloudflare to contempt and sanctions.  *See* **Exhibit 2**, at 2, 4.  Plaintiff further informed Cloudflare that, contrary to its contentions, neither the Litigation Administrator nor the Post-Effective Date Debtors can be sued for pre-petition claims, nor are they members of BadgerDAO or currently parties to the Subscription Agreement, including because all pre-petition contracts and contractual obligations not otherwise expressly assumed were rejected through the Plan. *Id.* at 3–4.  Plaintiff consequently requested that Cloudflare withdraw the Counterclaims. *Id.* at 5.  In a letter dated September 15, 2025, Cloudflare refused, and expressed its intent to continue to pursue the discharged claims in this forum.

## LEGAL STANDARD

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7012 of the Federal Rules of Bankruptcy Procedure, a claim for relief must be "plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To

be plausible, pleadings "must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d. Cir. 2008); *see also In re Granite Partners, L.P.*, 210 B.R. 508, 514 (Bankr. S.D.N.Y. 1997) (dismissal proper where plaintiff not entitled to any type of relief); *Off. Comm. of Unsecured Creditors of Lois/USA, Inc. v. Conseco Fin. Servicing Corp. (In re Lois/USA, Inc.)*, 264 B.R. 69, 89 (Bankr. S.D.N.Y. 2001) ("[D]ismissal can and should be granted if the plaintiff's allegations, taken as true, along with any inferences that flow from them, are insufficient as a matter of law.").

Where, as here, a claim is filed against a post-emergence debtor and the claimant failed to file a proof of claim in the bankruptcy proceeding, relief cannot be granted under the law and the claims must be dismissed. *Agra v. Dolci (In re Major Modem Mgmt. Inc.)*, No. 22-10169 (MG), Adv. Pro. No. 23-1135 (MG), 2023 WL 5338580, at *4, *10 (Bankr. S.D.N.Y. Aug. 18, 2023) (dismissing claims where claimant failed to preserve claims by filing timely proof of claim); *Houbigant, Inc. v. ACB Mercantile (In re Houbigant, Inc.)*, 188 B.R. 347, 353 (Bankr. S.D.N.Y. 1995) (dismissing creditor's counterclaims because of failure to file proof of claim); *Meghji v. Bailey (In re Celsius Network LLC)*, 669 B.R. 283, 297 (Bankr. S.D.N.Y. 2025) ("Counterclaims [against litigation administrator as representative to post-effective date debtors] are barred by the confirmed Plan and the Defendant's failure to file a proof of claim.").

## ARGUMENT

### I.    CLOUDFLARE CANNOT SUE THE LITIGATION ADMINISTRATOR OR THE POST-EFFECTIVE DATE DEBTORS FOR PURPORTED PRE-PETITION CLAIMS

The Counterclaims purport to bring indemnification claims under the 2021 Subscription Agreement against "the Litigation Administrator pursuant to the Litigation Administrator Agreement, [Bankr. ECF 4289]," as well as "against the Post-Effective Date Debtors formerly

11

known as the Celsius Network LLC." Counterclaims, n.10. But Cloudflare has no authority to sue either entity for at least two reasons. *First*, the Litigation Administrator and the Post-Effective Date Debtors cannot be sued for claims that Cloudflare erroneously believes that it has against Celsius—these are three distinct entities. *See, e.g.*, *Raymond James & Assocs. v. Jalbert (In re German Pellets La.), LLC*, 91 F.4th 802, 813 (5th Cir. 2024). *Second*, in any event, neither the Post-Effective Date Debtors nor the Litigation Administrator could be sued based upon a ***pre-petition*** indemnification provision, because any such claims were discharged under the Plan. *Id.*

A.    **Neither The Litigation Administrator Nor The Post-Effective Date Debtors Can Be Sued For Purported Claims Against Pre-Petition Celsius**

As an initial matter, nothing in the Litigation Administrator Agreement or under the law authorizes Cloudflare to sue the Litigation Administrator for ***any*** unpreserved pre-petition claims.

*Matter of German Pellets Louisiana* is instructive. In that case, the Fifth Circuit rejected the argument that a post-confirmation trustee can be saddled with a debtor's pre-petition indemnity obligations. *Id.* at 806. There, an investment firm sought to assert indemnity-based defenses against claims pursued by a liquidating trustee, relying on agreements with the debtor that predated bankruptcy. *Id.* at 806, 808. The court held, *inter alia*, that the defenses were barred because the liquidating trust was a distinct post-confirmation entity, not a successor to the debtor's liabilities. *Id.* 810–12. Because the debtor no longer existed, the trust could not be forced to shoulder its obligations, and the investment firm was "precluded from invoking them defensively." *Id*. at 813. The court further observed that the post-confirmation debtor entities, just like the litigation trustee, are also distinct from the debtor's estates and unable to shoulder the debtor's pre-effective date liabilities. *Id.* at 812; *see also United States v. Bond*, 762 F.3d 255, 260 (2d Cir. 2014) ("The Code makes clear that 'the debtor,' 'the trustee,' and an appointed 'representative of the estate'—here, the Liquidating Trustee—are three distinct actors."); *see also*, *In re Nine West LBO Sec. Litig.*, 505

12

F. Supp. 3d 292, 309 (S.D.N.Y. 2020) ("A litigation trustee, like a bankruptcy trustee but unlike shareholders bringing derivative claims, represents the interests of creditors of the bankruptcy estate[.]"); *Westchester Fire Ins. Co. v Schorsch*, 186 A.D.3d 132, 143 (1st Dep't 2020) ("[T]he Creditor Trust must be viewed as a separate entity from the debtor."); *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 355–56 (5th Cir. 2008) (rejecting post-confirmation entity's non-preserved claims against former creditor and other defendants because "upon confirmation of the plan, the estate ceased to exist"); *Segner v. Admiral Ins. Co. (In re Palmaz Sci., Inc.)*, No. 16-50552-CAG, 2018 WL 3343597, at *11 (Bankr. W.D. Tex. June 4, 2018) ("[T]he debtor, debtor in possession, and the post-confirmation entity are all separate entities.").

Just so here.  The Litigation Administrator, the Post-Effective Date Debtors, and pre-petition Celsius are all entirely distinct entities.  Neither the Litigation Administrator nor the Post-Effective Date Debtors is a successor-in-interest or in-liability of the defunct Celsius, and neither can be sued in that capacity for claims a party has against pre-bankruptcy Celsius.  *See, e.g.*, *In re German Pellets La., LLC*, 91 F.4th 802; *Metcalf v. Golden*, 488 F.3d 836, 840 (9th Cir. 2007) (affirming dismissal of counterclaim improperly brought against trustee where allegations concerned conduct of debtor before bankruptcy filing and would require trustee to "stand in the shoes of the debtor to defend against the counterclaim").  The Counterclaims should be dismissed on this ground alone.

**B.    Purported Indemnification Obligations Are Pre-Petition Claims That Have Been Discharged Under The Plan**

The Counterclaims should be dismissed for a separate and independent reason: They are an impermissible attempt to bring unpreserved pre-petition claims discharged under the Plan after the Effective Date.

13

The basis for the Counterclaims—Cloudflare's alleged indemnification rights contained in the Subscription Agreement—are from a pre-petition contract and became ripe when Cloudflare and BadgerDAO entered into the contract, not as a result of the Litigation Administrator's post-Effective Date lawsuit against Cloudflare. The law is clear that indemnification rights, such as those sought by Cloudflare, do "not spring into existence only when" a lawsuit is filed, but those indemnification obligations (even assuming they exist, *see infra*) "arose pre-petition." *In re German Pellets La., LLC*, 91 F.4th at 810. Indeed, courts routinely find that indemnification rights arise when the applicable agreement is entered, ***not*** when a party later seeks to enforce that indemnification right. *See id.*; *see also Sealink Funding Ltd. v. Deutsche Bank AG (In re Residential Capital LLC)*, 489 B.R. 36, 45 (Bankr. S.D.N.Y. 2013) ("[An] indemnification right arises at the time the indemnification agreement is executed, and it constitutes a claim under the Bankruptcy Code even if the act giving rise to the indemnification has not yet occurred."); *Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*, No. 11-civ-2232 (NRB), 2011 WL 4965150, at *4–5 (S.D.N.Y. Oct. 19, 2011) (indemnification claims "arise[]at the time the indemnification agreement is executed"); *Olin Corp. v. Riverwood Int'l (In re Manville Forest Prods., Corp.)*, 209 F.3d 125, 129 (2d Cir. 2000) (indemnification agreement signed before petition date gave rise to pre-petition claim); *Houbigant, Inc. v. ACB Mercantile (In re Houbigant, Inc.)*, 188 B.R. 347, 358–59 (Bankr. S.D.N.Y. 1995) ("a contractual indemnification claim exists as a contingent claim against the indemnitor as of the date the indemnification agreement is executed."); *P.A. Props. v. B.S. Moss' Criterion Ctr. Corp.*, No. 02 Civ. 4900 (LTS) (THK), 2004 WL 2979984, at *12 (S.D.N.Y. Dec. 23, 2004) ("[I]n the context of indemnity agreements, a contingent right to payment is created at execution, such that the agreement becomes a contractual obligation upon

14

signing, rather than at the moment when the contingent event triggering the indemnification occurs.").

Thus, to the extent Cloudflare had any claims stemming from the Indemnification Provision contained in the 2021 Subscription Agreement between BadgerDAO and Cloudflare, such claims were inherently prepetition claims. As such, Cloudflare's only recourse was to file a Proof of Claim in the Chapter 11 Cases. *See, e.g.*, *P.A. Props., Inc.*, 2004 WL 2979984, at \*12 (claims based on indemnification agreements must be asserted by proof of claim); Fed. R. Bankr. P. 3003(c)(2) ("A creditor or equity security holder whose claim or interest is not scheduled—or is scheduled as disputed, contingent, or unliquidated—must file a proof of claim or interest."); *Order (I) Setting Bar Dates For Submitting Proofs of Claim, (II) Approving Procedures For Submitting Proofs of Claim (III) Approving Notice Thereof, And (IV) Granting Related Relief* [Bankr. ECF No.. 1368] ¶¶ 4, 6 ("Any person or entity that holds a Claim arising from the rejection of an executory contract or unexpired lease must submit a Proof of Claim based on such rejection on or before the later of (a) the General Claims Bar Date and (b) any date this Court may fix in the applicable order authorizing such rejection and, if no such date is provided, thirty days from the date of entry of such order…[A]ny holder of a Claim that is not excepted from the requirements of the Bar Date Order and fails to timely submit a Proof of Claim in the appropriate form shall be forever barred, estopped, and enjoined from [] asserting such Claim against the Debtors and their chapter 11 estates[.]"); Jeffrey Sharer, *Noncompetition Agreements in Bankruptcy: Covenants (Maybe) Not to Compete*, 62 U. Chi. L. Rev. 1549, 1554 n.25 (1995) ("[W]here state law provides a damage remedy for breach of the rejected contract, the nondebtor's only recourse is to file a proof of claim against the estate[.]").

15

The deadline to file a Proof of Claim was March 1, 2024, and has long since passed. Plan, Art. V.A., V.B. Because Cloudflare did not preserve its indemnification claim by filing a Proof of Claim, it cannot pursue these claims now in this forum. *See, e.g.*, *P.A. Props., Inc.*, 2004 WL 2979984, at \*12 (claims based on indemnification agreements must be asserted by proof of claim); *Allstate Ins. Co*, 2011 WL 4965150, at \*4–5 (indemnification claims against debtor could not be brought in bankruptcy proceeding because defendants did not file proof of claims); *In re Residential Capital LLC*, 558 B.R. 77, 85 (S.D.N.Y. 2016) (appellees' counterclaims, which were unsecured contingent claims "within the contemplation of the parties at the time of pre-petition contract execution," were discharged because appellees did not file proofs of claims); *Conway Hosp. Inc. v. Lehman Bros. Holdings Inc.*, 531 B.R. 339, 333–34 (S.D.N.Y. 2015) (pre-petition claims were time-barred because plaintiff did not file proof of claim before bar date).

Any attempt to assert any cause of action whatsoever against the Debtors or the Post-Effective Date Debtors is now permanently enjoined by the Discharge Injunction. *See* Plan, Art. VIII.A. [Case No. 22-10964 (MG), Dkt. No. 3577] (Confirmation Order constitutes "a judicial determination of the discharge of all Claims"). The Discharge Injunction provides that "all entities that have held, hold, or may hold [c]laims or [i]nterests that have been released, discharged, or are subject to exculpation are permanently enjoined, from . . . commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests" against, among other parties, the Debtors or the Post-Effective Date Debtors. Plan, Art. VIII.F.

16

Accordingly, even if Cloudflare had a valid claim (which it does not),[4] such claim was discharged as part of the Plan, and Cloudflare is permanently enjoined from attempting to assert that claim against the Post-Effective Date Debtors or the Litigation Administrator in this adversary proceeding, and Cloudflare's refusal to dismiss the Counterclaims despite the Discharge injunction and its continued efforts to pursue such claims is sanctionable.[5]  *See infra* at Section V.

## II.    THE POST-EFFECTIVE DATE DEBTORS ARE NOT CURRENT PARTNERS OF BADGERDAO AND HAVE NO OBLIGATIONS UNDER THE SUBSCRIPTION AGREEMENT

Even assuming that Cloudflare could procedurally assert pre-petition claims against Celsius by suing the Post-Effective Date Debtors and the Litigation Administrator, those claims would fail because neither the Litigation Administrator nor the Post-Effective Date Debtors owe Cloudflare any contractual obligations.

Cloudflare alleges that, by virtue of Celsius's pre-petition investment in BadgerDAO, the Post-Effective Date Debtors are currently a general partner of BadgerDAO, and thus are bound by the contracts between BadgerDAO and Cloudflare, including the Subscription Agreement.  *See* Counterclaims ¶¶ 7−9, 37, 63, 70, 79, 91.  To be clear, Celsius was a general partner of BadgerDAO prior to the Petition Date, including at the time that Cloudflare's negligence led to the cyberhack at issue.  *See* Compl. ¶¶ 90-92; Mohsin Y. Meghji's Opposition to Defendant Cloudflare, Inc.'s Motion to Dismiss [ECF No. 16] ¶ 17.  However, under New York law, Celsius's former partnerships were all dissolved when Celsius filed for bankruptcy in July 2022.  *See* N.Y.

---

[4] If Cloudflare wished to pursue its purported claims against Celsius, it could seek leave in the Bankruptcy Court to file a late proof of claim, which it has not done, but it cannot evade the bar date by attempting to litigate these purported claims in this adversary proceeding.

[5] Cloudflare is also expressly prohibited from asserting such Counterclaims as a setoff against the Litigation Administrator's claims against it pursuant to the Plan. *See* Plan, Article VI.L ("In no event shall any Holder of Claims be entitled to set off or recoup any Claim against any claim, right, or Cause of Action of the Debtors or Post-Effective Date Debtors (as applicable)…").

P'ship L. § 62 (2024) ("Dissolution is caused … [b]y the bankruptcy of any partner or the partnership."); *In re Century/ML Cable Venture*, 294 B.R. 9, 24-25 (Bankr. S.D.N.Y. 2003) (noting that under N.Y. P'ship Law § 62(5), partner's bankruptcy ordinarily causes dissolution of partnership).

Moreover, even if the bankruptcy filing had not severed Celsius's partnership in BadgerDAO, the Post-Effective Date Debtors still would not be a partner in BadgerDAO because any partnership agreement with BadgerDAO was rejected on the Effective Date pursuant to the Plan. *See infra* Section B; Plan, Art. V.A ("[A]ll Executory Contracts…shall be deemed rejected by the Debtors or Post-Effective Date Debtors, as applicable, without the need for any further notice[.]"); *In re Heafitz*, 85 B.R. 274, 282–84 (Bankr. S.D.N.Y. 1988) (finding partnership agreement was executory because of partner's ongoing duty to contribute to partnership); *In re St. Casimir Dev. Corp.*, 358 B.R. 24, 45 (S.D.N.Y. 2007) (same); *In re Schick*, 235 B.R. 318, 322 (Bankr. S.D.N.Y. 1999) (The parties agree that the partnership agreement is an executory contract.").[6] Thus, any obligation owed to Cloudflare as a result of Celsius being a general partner of BadgerDAO would also have been terminated at this time.[7]

In light of this rejection, the Post-Effective Date Debtors (much less the Litigation Administrator) cannot have any ongoing obligation to Cloudflare. *See, e.g.*, *In re Avianca Holdings S.A.*, 618 B.R. 684, 697 (Bankr. S.D.N.Y. 2020) (via "powerful tool" of rejection, "the debtor can escape all of its future contract obligations").

---

[6] Notably, the Post-Effective Date Debtors no longer own any Badger tokens (governance or otherwise). Thus, while Celsius was a partner in BadgerDAO as a result of its ownership of Badger tokens in 2021, when the hack occurred and when Celsius was harmed, the Post-Effective Date Debtors hold no governance tokens today. *See* Compl. ¶¶ 81–90 ("Cloudflare owed BadgerDAO and all its governing members, including Celsius, a duty to implement adequate security protocols[.]"); *see also generally* Compl. (noting that Celsius was a cryptocurrency platform and was owed a duty as a member in BadgerDAO, past tense).

[7] To the extent Cloudflare asserts that there was a contractual relationship between it and the Debtors independent of the BadgerDAO partnership agreement (which there was not), such agreement would also have been rejected as of the Effective Date.

18

In short, neither Plaintiff nor the Post-Effective Date Debtors are currently partners in BadgerDAO, and as a result, do not have any obligations under the Subscription Agreement as a matter of law. Consequently, Cloudflare cannot bring a contractual claim for indemnification against Plaintiff or the Post-Effective Date Debtors, directly or through the Litigation Administrator. *Richmond Am. Homes of Ariz., Inc. v. Uponor Wirsbo, Inc.*, No. CV-12-00610-PHX-ROS, 2012 WL 12941130, at *2 (D. Ariz. Dec. 12, 2012) (finding that plaintiff could not bring contractual indemnification claim for terminated contract that contained "no indication that the indemnification obligation was meant to survive the termination of the agreement"); *Jackson Nat. Life Ins. Co. v. Workman Sec. Corp.*, 803 F. Supp. 2d 1006, 1015 (D. Minn. 2011) (granting summary judgment in favor of third-party defendant because indemnification provision did not explicitly survive termination of contract and, as such, claimant could not bring indemnification claim); *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 408 (S.D.N.Y. 2011) ("To state a claim ... for indemnification, a claimant must show… that it is a party to the relevant agreement.").

## III.    CLOUDFLARE CANNOT SUE ONLY SOME, BUT NOT ALL, BADGERDAO PARTNERS

If Cloudflare wants to sue the BadgerDAO partnership for failing to abide by its supposed indemnification obligations under the Subscription Agreement, it is required to sue all of the partners of BadgerDAO, not just some discrete subset. This is because general partners are jointly, but not severally, liable for the partnership's obligations. *See Owen Steel Co., Inc. v. George A. Fuller Co.*, 563 F. Supp. 298, 300 (S.D.N.Y. 1983); *FDIC v. Shea & Gould*, No. 95 CIV. 5491 (JFK), 1997 WL 401822, at *14 (S.D.N.Y. July 17, 1997) ("For contract claims, New York law requires that a partnership may only be sued where the partnership itself is named as a defendant or all of the partners are named as defendants."); *Eastern Metals Corp. v. Martin*, 191 F. Supp.

19

245, 253 (S.D.N.Y. 1960) ("The liability of the partners for an obligation of the partnership, an obligation based on a breach of contract by the partnership is a joint liability of the partners. All of the partners are indispensable parties to an action to enforce the liability."); *Harborview Capital Partners v. Solomon Invs.,* No. 651385/2019, 2020 N.Y. Misc. LEXIS 9862, at *3-4 (N.Y. Sup. Ct. Oct. 6, 2020) ("Under New York partnership law, members of a general partnership are liable 'jointly for all other debts and obligations of the partnership'" and a cause of action for breach of contract against partnership was required to "name[] each member of the partnership as a party defendant[.]"); N.Y. P'ship L. § 26(a)(2) ("[A]ll partners are liable…jointly for all other debts and obligations of the partnership[.]"); *Bank Julius Baer & Co. Ltd. v. Kopple*, No. 90 Civ. 3186 (TPG), 1992 WL 88135, at *4 (S.D.N.Y. Apr. 22, 1992) ("Each general partner is liable for the whole debt of the partnership," dating back to the time the obligation was incurred.).

Therefore, "absent an allegation that the partnership is insolvent or otherwise unable to pay its obligations, no action lies against the partners individually." *Owen Steel Co., Inc.*, 563 F. Supp. at 300; *see also Saugatuck, LLC v. St. Mary's Commons Assocs., L.L.C.*, No. 19-cv-217 (SIL), 2024 WL 4107247, at *11 (E.D.N.Y. Sept. 5, 2024); *Shea & Gould*, 1997 WL 401822, at *14. Cloudflare does not allege that BadgerDAO is insolvent or that its assets are otherwise inaccessible, so it must pursue BadgerDAO itself for any alleged breach. It has already done just that, as BadgerDAO has now been joined in this litigation by Cloudflare. *See* Cloudflare, Inc.'s Third-Party Complaint [ECF No. 47] at 2.

In the alternative, Cloudflare should need to join BadgerDAO together with every single one of its partners to the lawsuit. *See, e.g.*, *U.S. Trust Co. v. Bamco 18,* 183 A.D.2d 549, 551 (1st Dep't 1992) ("[P]laintiff either [must] name the partnership as a party defendant, along with the individual partners, or aver the insufficiency of partnership assets to satisfy the claim."); *Beltrone*

20

*v. Gen. Schuyler & Co.*, 223 A.D.2d 938, 940–41 (3d Dep't 1996) (no need to show insufficiency of partnership assets "where … partnership is named as a party defendant along with the individual partners"); *Harborview Cap. Partners*, 2020 N.Y. Misc. LEXIS 9862, at \*3-4 (same).  And although Cloudflare has now joined BadgerDAO to this action, it has failed to join any of BadgerDAO's other individual partners.  If it had joined all of BadgerDAO's individual partners, Cloudflare could have attempted to recover from them, but only after it had recovered any available joint property from the partnership.  *U.S. Trust Co.*, 183 A.D.2d at 551.  Regardless, joining only two alleged individual partners and omitting all others, as Cloudflare has done here, is insufficient. *See Shea & Gould*, 1997 WL 401822, at \*14 (where partners are joint obligors, and contract claim is based upon breach of contract by partnership rather than individual partners, plaintiff must name all partners as defendants); *Eastern Metals Corp.*, 191 F. Supp. at 253 ("All of the partners are indispensable parties to an action to enforce the liability.").

## IV.  CLOUDFLARE'S POTENTIAL LIABILITY IS NOT COVERED BY THE INDEMNIFICATION AGREEMENT

Cloudflare's fundamental premise is that the Post-Effective Date Debtors are bound by the Subscription Agreement, and thus must also indemnify Cloudflare for claims brought against it. This would obviously lead to an absurd result, and in any event, the argument fails, because the Subscription Agreement does not entitle Cloudflare to seek indemnification because (i) even if the Post-Effective Date Debtors had contractual obligations to Cloudflare, first-party claims are not subject to indemnification under the Subscription Agreement; (ii) Plaintiff's Complaint asserts a claim for gross negligence, which cannot be subject to indemnification; and (iii) Cloudflare's indemnification request is, at best, premature.

21

### A.      First-Party Claims Are Not Subject To Indemnification

As an initial matter, for Plaintiff to be required to indemnify Cloudflare against Plaintiff's own claims, the Subscription Agreement would need to expressly state that the Indemnification Provision covers first-party claims.  It is well-established that, for an indemnification agreement to encompass claims between the parties to the agreement, there must be clear and explicit language to that effect.  *See City of Bell v. Superior Ct.*, 163 Cal. Rptr. 3d 90, 102 (Cal. Ct. App. 2013)[8] ("[F]or an indemnity agreement to encompass claims between the parties to the agreement, and to act as an exculpatory clause or release, there must be clear and explicit language to that effect."); *see also Alki Partners, LP v. DB Fund Servs., LLC*, 209 Cal. Rptr. 3d 151, 171 (Cal. Ct. App. 2016) (denying motion for first-party indemnification for attorney's fees because "if the surrounding provisions describe third party liability, the clause will be construed as a standard third party indemnification provision"); *Thart v. Colliers Int'l Grp. Inc.*, No. 2:24-CV-10876-CV (EX), 2025 WL 1356943, at *3 (C.D. Cal. Apr. 8, 2025) (dismissing counterclaim for first-party indemnification as "[t]he indemnification clause only covers third-party claims because the Agreement does not indicate that [the parties] intended otherwise"); *Total Mgmt. Servs. Am., Inc. v. E-Shop Labo LLC*, No. 22STCV13261, 2024 WL 4380936, at *14 (Cal. Super. Ct. Aug. 28, 2024) (Contract did not encompass first-party indemnification because "there is no language in the indemnification provision suggesting it applies specifically to damages arising from the parties' own conduct or claims between the parties.").

Explicit language is especially necessary where, as here, a party seeks indemnification against its own negligence.  *City of Bell*, 163 Cal. Rptr. 3d at 101 ("An indemnity agreement may provide for indemnification against an indemnitee's own negligence, but such an agreement must

---

[8] The Subscription Agreement is governed by California law.  Subscription Agreement at § 13.

be clear and explicit and is strictly construed against the indemnitee."). Indeed, courts will construe indemnification clauses strictly against any party seeking indemnification against their own negligence. *Id*.

Here, the Subscription Agreement's Indemnification Provision does not contain any clear or explicit language indicating that the indemnity agreement encompasses claims between the actual parties to the Subscription Agreement. *See* Subscription Agreement § 10.2. Instead, the Subscription Agreement states only that Cloudflare is indemnified "from and against any and all claims, liabilities, damages, losses, and expenses, including reasonable attorneys' fees and costs, arising out of or in any way connected with [BadgerDAO's] access to, use of, or alleged use of the Service." *Id*. Courts routinely find that this type of language does not cover indemnification of first-party claims. *See, e.g.*, *Am. First Fin. LLC v. Garcia,* No. 1:23-CV-00117-KES-EPG, 2025 WL 418686, at *3 (E.D. Cal. Feb. 6, 2025) ("Broad language, such as 'any and all loss,' is presumed to apply only to third-party fees and costs; such broad phrases contain 'none of the specific language that would indicate an agreement to include first-party litigation costs.'"); *Alki Partners, LP*, 209 Cal. Rptr. 3d at 172 ("[A]n indemnification clause in which one party promised to 'indemnify' the other from 'any, all, and every claim' which arises out of 'the performance of the contract' … deals only with third party claims."); *AGK Sierra De Montserrat, L.P. v. Comerica Bank*, 109 F.4th 1132, 1141 (9th Cir. 2024) (presumption against first-party indemnification "applies to even broad language in indemnity provisions, like 'all claims ... arising out of or resulting from performance of the Work,' and 'all liability' relating to claims by 'any person' for injuries 'aris[ing] out of, or ... in any way connected with, or incidental to the performance of the work under this []contract'"); *Lesly v. Schmuel*, No. 21STCV33639, 2025 Cal. Super. LEXIS 22152, at *5 (Cal. Super. Ct. June 9, 2025) ("Even an indemnification clause covering 'any, all,

23

and every claim' arising out of 'the performance of the contract' does not cover first-party claims.").

The Subscription Agreement also provides that BadgerDAO will "indemnify" and "hold harmless" Cloudflare. Subscription Agreement § 10.2. Both expressions are hallmarks of a third-party indemnification agreement. *See City of Bell*, 163 Cal. Rptr. 3d at 101 ("[A] clause which contains the words 'indemnify' and 'hold harmless' is an indemnity clause which generally obligates the indemnitor to reimburse the indemnitee for any damages the indemnitee becomes obligated to pay third persons," not first persons); *Seirafi v. City of Riverside*, No. 5:19-cv-02054-CAS-KKx, 2022 WL 1843226, at *3 (C.D. Cal. Mar. 29, 2022) (same); *Audra Karim v. Sec. Bldg. Loft Partner L.P*, No. 24STCV06491, 2024 Cal. Super. LEXIS 57815, at *5 (Cal. Super. Ct. Dec. 4, 2024) ("[T]he provision at issue here speaks of 'indemnification,' and of the tenant's obligation to 'indemnify and hold harmless' Defendant for all damages suffered as a result of the tenant's negligence or breach of the agreement. These linguistic markers strongly indicate the provision is for third-party indemnification, not first-party attorney fees.").

Finally, the Indemnification Provision expressly references third-party liability. *See* Subscription Agreement § 10.2 (references to "your violation of any third-party right" and "any disputes or issues between you and a third party"). Such reference to third-party liability further proves that the Subscription Agreement only applies to third-party claims. *See Seirafi*, 2022 WL 1843226, at *3 ("Generally, if the surrounding provisions describe third party liability, the clause will be construed as a standard third party indemnification provision."); *Myers Bldg. Indus., Ltd. v. Interface Tech., Inc*., 17 Cal. Rptr. 2d 242, 254 (Cal. Ct. App. 1993) ("Indemnification agreements ordinarily relate to third-party claims."); *see also Alki Partners, LP*, 209 Cal. Rptr. 3d

24

at 171 ("Generally, if the surrounding provisions describe third party liability, the clause will be construed as a standard third party indemnification provision.").

In short, the Subscription Agreement contains all the hallmarks of a third-party indemnification agreement, and Cloudflare cannot rely on such a provision to seek indemnification for Plaintiff's direct claims against Cloudflare. *Thart*, 2025 WL 1356943, at *3 (dismissing counterclaim for first-party indemnification since "the indemnification clause only cover[ed] third-party claims"); *Alki Partners, LP,* 209 Cal. Rptr. 3d at 171 (claim for first-party indemnification failed because agreement covered only third-party indemnification); *Total Mgmt. Servs. Am., Inc.*, 2024 WL 4380936, at *14 (same).

### B. Gross Negligence Claims Are Not Subject To Indemnification

In any event, the Complaint asserts a claim for gross negligence, Compl. ¶¶ 89–94, and California law does not allow a party to obtain indemnification for its own gross negligence. Cal Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."). Indeed, California courts have repeatedly found indemnification clauses to be unenforceable and void against gross negligence claims because they violate public policy. *Thomas v. Real*, No. 21STCV31353, 2022 Cal. Super. LEXIS 11776, at *12 (Cal. Super. Ct. Mar. 15, 2022) (indemnification clause unenforceable and void against gross negligence claim under Cal. Civ. Code § 1668); *In re Trans-Action Com. Invs., Ltd.*, No. 97-46121 T, 2002 WL 32341923, at *14 (Bankr. N.D. Cal. June 28, 2002) ("[T]o the extent that the Setoff Claims constituted constructive fraud, as opposed to ordinary negligence, the Court concludes that it would violate public policy" to require indemnification); *City of Santa Barbara v. Super. Ct.*, 41 Cal. 4th 747, 776–77 (Cal.

25

2007) (holding that an agreement to release liability for future gross negligence "violate[d] public policy" because it "remove[d] an obligation to adhere to even a minimal standard of care" and was thus unenforceable); *Grebing v. 24 Hour Fitness USA, Inc.*, 234 Cal. App. 4th 631, 637 (Cal. App. Ct. 2015) ("A release of liability for future gross negligence, in contrast, generally is unenforceable as a matter of public policy."). Cloudflare's attempt to enforce the indemnification provision against Plaintiff's gross negligence claim is therefore unenforceable and void under applicable law.

### C.     Cloudflare's Indemnification Request Is Premature

Finally, even if it had a valid basis under the Subscription Agreement (it does not), Cloudflare's demand for indemnification would be at best premature, as there is no existing determination that damages are owed or that a loss was sustained. *Per-Pap LLC v. OS Pac. LLC*, 2023 WL 10675334, at *8 (C.D. Cal. Nov. 29, 2023) (contractual indemnity claim not ripe until liability has been determined); *Lepire v. Analytics*, No. 30-2017-00896413-CU-WT-NJC, 2018 Cal. Super. LEXIS 64623, at *2 (Cal. Super. Ct. June 4, 2018) (motion for advance on indemnification fees and costs on contractual indemnification premature); *Total Mgmt. Servs. Am., Inc.*, 2024 WL 4380936, at *5 ("[B]ecause the [parties'] breach of contract claim relies on an indemnification provision, the core issue of whether a duty to indemnify even exists is not ripe until the underlying litigation has been decided.").

### V.     THIS COURT SHOULD GRANT SANCTIONS FOR CLOUDFLARE'S KNOWING VIOLATION OF THE DISCHARGE INJUNCTION

As described above, the Discharge Injunction clearly bars the Counterclaims. Cloudflare's continued and knowing prosecution of the barred Counterclaims—which has forced the Litigation Administrator to incur significant costs—constitutes a clear violation of this Court's order.

A discharge order "operates as an injunction against the commencement or continuation of an action ... to collect, recover or offset any such debt ...." 11 U.S.C. § 524(a)(2).  A court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]." 11 U.S.C. § 105(a).  The Supreme Court has interpreted these provisions to permit civil contempt sanctions when a potential creditor violates the discharge injunction without an objectively reasonable basis for believing its conduct was lawful.  *See Taggart v. Lorenzen*, 587 U.S. 554, 565 (2019).  A court may therefore impose civil contempt sanctions where "there is no fair ground of doubt as to whether the order barred the creditor's conduct."  *Id.*; *In re DiBattista*, 615 B.R. 31, 38 (S.D.N.Y. 2020).

Moreover, this Court has the inherent power to hold a disobeying party in civil contempt when (i) the order the party allegedly failed to comply with is clear and unambiguous; (ii) the proof of noncompliance is clear and convincing; and (iii) the party has not diligently attempted in a reasonable manner to comply.  *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (JMP), 2013 WL 6283572, at *1 (Bankr. S.D.N.Y. Dec. 3, 2013); *see also In re Anderson*, 884 F.3d 382, 391 (2d Cir. 2018) ("The statutory contempt powers given to a bankruptcy court under § 105(a) complement the inherent powers of a federal court to enforce its own orders.").

Here, there is no fair ground to doubt that the Discharge Injunction bars Cloudflare's conduct.  The Discharge Injunction was entered "pursuant to section 524(a) of the Bankruptcy Code," and expressly enjoins all entities from "commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests" against "Released Parties" that has been discharged.  Plan, Art. VIII.F; *Id.* Art. I.A. ("'*Released Party*' means … any Litigation Administrator(s)").  The Discharge Injunction, therefore, is clear and unambiguous.  Cloudflare's Counterclaims violate the Discharge

27

Injunction because they seek to pursue a discharged pre-petition claim directly against the Post-Effective Date Debtors and the Litigation Administrator. *See supra* Section II.B.

Notwithstanding the clear and unambiguous language of the Discharge Injunction, Cloudflare has not diligently attempted in a reasonable manner to comply. On September 5, 2025, Plaintiff notified Cloudflare that its Counterclaims are a direct violation of the Discharge Injunction and requested that Cloudflare withdraw the Counterclaims. On September 15, 2025, Cloudflare confirmed in writing to the Litigation Administrator that it refused to withdraw the Counterclaims, thus forcing the Debtors' estates to expend substantial resources on preparing this response to the Counterclaims. Cloudflare's refusal to withdraw the Counterclaims even after Plaintiff's demand is clear and convincing proof of noncompliance with the Discharge Injunction. *See In re Lehman Bros. Holdings Inc.*, 2013 WL 6283572, at *2 (clear and convincing proof of noncompliance where party "persisted in its suit [ ] despite repeated warnings that the litigation was a violation of the injunction").

In light of Cloudflare's knowing and ongoing violation of the Discharge Injunction, Plaintiff respectfully submits that sanctions and/or a contempt order are appropriate in order to compel compliance with the Discharge Injunction and to compensate Plaintiff for the unnecessary costs and fees incurred in responding to the baseless Counterclaims.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court dismiss Defendant Cloudflare's counterclaims, hold Cloudflare in civil contempt and impose sanctions against Cloudflare for willful violation of the Discharge Injunction, and issue such further relief as the Court deems just and proper.

DATED:        September 17, 2025

*/s/ Joshua D. Weedman*

**WHITE & CASE LLP**
Joshua D. Weedman
Samuel P. Hershey
Renza Demoulin
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
jweedman@whitecase.com
sam.hershey@whitecase.com
renza.demoulin@whitecase.com

## CERTIFICATE OF SERVICE

I, Joshua Weedman, certify that I am over eighteen (18) years of age, am not a party to this action, and am an attorney licensed by the State Bar of New York and admitted to practice in this Court.  I further certify that on September 17,  2025, upon electronic filing of the Memorandum of Law in Support Of Mohsin Y. Meghji's Motion to Dismiss Defendant Cloudflare, Inc's Counterclaims and for Sanctions and Contempt, electronic mail filing notifications were sent to Mayer Brown LLP, 1221 Avenue of the Americas, New York, NY 10020 (Attn: Matthew D. Ingber, mingber@mayerbrown.com), as well as to all attorneys of record registered to receive electronic mail notices of filings in this case via this Court's ECF filing system.

I declare under penalty of perjury that the foregoing is true to the best of my knowledge.


Dated:  September 17, 2025

> */s/  Joshua D. Weedman_____*
> Joshua D. Weedman
> **WHITE & CASE LLP**
> 1221 Avenue of the Americas
> New York, NY 10020
> Telephone: (212) 819-8963
> jweedman@whitecase.com

30