Peter Scoolidge
Scoolidge Peters Russotti & Fox LLP
2 Park Avenue – 20th Floor
New York, NY 10016
Telephone: (212) 729-7708
Email: peter@sprfllp.com

*Counsel for Third-Party Defendant BadgerDAO*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,[1]<br><br>      Post-Effective Date<br>      Debtors. | Case No. 22-10964 (MG)<br><br>Chapter 11 |
| MOHSIN Y. MEGHJI, as Representative for the Post-Effective Date Debtors,<br><br>      Plaintiff-Counterclaim<br>      Defendant,<br><br>          v.<br><br>CHRISTOPHER SPADAFORA<br><br>      Defendant-Crossclaim<br>      Defendant<br><br>and CLOUDFLARE, INC.,<br><br>      Defendant-<br>      Counterclaim/Crossclaim<br>      Plaintiff | Adv. Proceeding No. 24-03981 (MG) |

---

[1] Pursuant to the Complaint and Third-Party Complaint, the Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these Chapter 11 Cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

CLOUDFLARE, INC.,

                      Third-Party Plaintiff,

          v.

BADGERDAO and JOHN DOES 1 through 10,

                      Third-Party Defendants.

**MEMORANDUM OF LAW IN SUPPORT**
**OF THIRD-PARTY DEFENDANT BADGERDAO'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.  INTRODUCTION ..............................................................................................6

II.  RELEVANT BACKGROUND FROM CLOUDFLARE'S PLEADINGS ...........................9

    A.  The Parties ...........................................................................................9

    B.  The Self-Service Subscription Agreement ..........................................9

    C.  Celsius's Allegations .........................................................................10

III.  ARGUMENT ...............................................................................................11

    A.  The Court Lacks Subject Matter Jurisdiction over the Third-Party Complaint ...............11

    B.  The Court Lacks Personal Jurisdiction over BadgerDAO as to the Contribution Claim ..17

IV.  CONCLUSION .............................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Barber v. Riverside Int'l Trucks (In re Pearson Indus.)*, 142 B.R. 831 (Bankr. C.D. Ill. 1992)...16

*Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692 (S.D.N.Y. 2011) ..................................11

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255 (2017) ................................................................................................................................18, 20

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .................................................................19

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) ..........................................................................15

*Gonzalez v. Option One Mortg. Corp.*, No. 3:12-CV-1470 (CSH), 2014 WL 2475893 (D. Conn. June 3, 2014) .............................................................................................................................12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) .............................18, 20

*Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384 (2d Cir. 1990)...............................................................................14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)..................................20

*Holland Indus., Inc. v. United States (In re Holland Indus., Inc.)*, 103 B.R. 461 (Bankr. S.D.N.Y. 1989)............................................................................................................................16

*In re Casual Male Corp.*, 317 B.R. 472 (Bankr. S.D.N.Y. 2004) ..................................................13

*In re Fairfield Sentry Ltd.*, 660 B.R. 568 (Bankr. S.D.N.Y. 2024) ...............................................18

*In re Firestar Diamond, Inc.*, 654 B.R. 836 (Bankr. S.D.N.Y. 2023)...........................................19

*In re Nat'l Events Holdings, LLC*, No. 17-11556 (JLG), 2023 WL 4771901 (Bankr. S.D.N.Y. July 26, 2023). ...........................................................................................................passim

*In re Robert Plan Corp.*, 777 F.3d 594 (2d Cir. 2015).......................................................13, 14, 15

*In re Turner*, 724 F.2d 338 (2d Cir. 1983) ...................................................................................15

*Industrias Vassallo, Inc. v. P.R. Elec. Power Auth. (In re Industrias Vassallo, Inc.)*, No. 08-7752, 2015 WL 4626763 (Bankr. D.P.R. July 31, 2015) ...................................................16

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) ...............................................................18

*Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003) .............................................................12

*Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P.*, 487 B.R. 158 (S.D.N.Y. 2013)...13

*Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697 (2d Cir. 2000) ...............................11

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) .........................................................11, 12

*Matter of U.S. Brass Corp.*, 110 F.3d 1261 (7th Cir. 1997)......................................................14, 15

*MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104 (2d Cir.2006)..........................................................13

*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957) .......................................................................19

*Neill v. Borreson (In re John Peterson Motors, Inc.)*, 56 B.R. 588 (Bankr. D. Minn. 1986) .......16

*Official Creditor's Comm. of Prods. Liab. & Personal Injury Claimants v. Int'l Ins. Co. (In re Pettibone Corp.)*, 135 B.R. 847 (Bankr. N.D. Ill. 1992) ...........................................................17

*Shea & Gould v. Red Apple Cos. (In re Shea & Gould)*, 198 B.R. 861 (Bankr. S.D.N.Y. 1996).14

*Spinner Fam. Holdings, LLC. v. GRG Chubb1 LLC (In re Garces Rest. Grp., Inc.)*, No. 18-1507, 2019 WL 3002932 (Bankr. D.N.J. July 9, 2019) ......................................................................16

*SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018) ...........................................................18

*Stern v. Marshall*, 564 U.S. 462 (2011) ....................................................................................13

*Walden v. Fiore*, 571 U.S. 277 (2014) ...............................................................................passim

**Statutes**

28 U.S.C. § 1334(a) ....................................................................................................................5

28 U.S.C. § 1334(b)....................................................................................................................6

NY CPLR § 1401 .......................................................................................................................11

BadgerDAO ("Third-Party Defendant" or "BadgerDAO") respectfully submits this memorandum of law in support of its Motion to Dismiss (the "**Motion**")[2] the claims against BadgerDAO asserted in the Third-Party Complaint (Dkt. No. 47) (the "**Third-Party Complaint**") filed by the Defendant and Third-Party Plaintiff, Cloudflare, Inc. ("**Cloudflare**").

## I.      INTRODUCTION

Cloudflare has asserted that BadgerDAO is liable to Cloudflare under a contractual indemnity and through a theory of contributory negligence related to the 2021 hack (the "**December Hack**"), whereby Celsius Network, LLC lost funds. Putting aside the merits of Cloudflare's claims, which ask the Court to hold BadgerDAO responsible for Cloudflare's failure to implement basic security measures, *see* Cloudflare's Third-Party Complaint ("Third-Party Compl.") ¶ 9, Cloudflare's claims are procedurally defective.

Cloudflare asserts four theories for recovery against BadgerDAO in the Third-Party Complaint. The first three causes of action relate to an alleged contract between Cloudflare and BadgerDAO, agreed to at an unspecified date and governed by California law (*i.e.*, the Self-Service Subscription Agreement), in which BadgerDAO allegedly agreed to defend, indemnify, and hold harmless Cloudflare in exchange for the use of its security services, and BadgerDAO's alleged breach thereof (the "**Indemnification Claims**"). The fourth cause of action against BadgerDAO alleges that, despite Celsius having reserved the right to bring claims against BadgerDAO and declining to do so, Celsius's original adversary Complaint (the "**Complaint**" or "**Compl.**") nonetheless alleged negligent conduct on the part of BadgerDAO which led to the December Hack. Specifically, Cloudflare alleges that BadgerDAO's failure to take appropriate

---

[2] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Motion or in the Third-Party Complaint.

security measures for the cryptocurrency assets held on the BadgerDAO platform—despite

having outsourced that security to Cloudflare—was a proximate cause of Celsius' injury and

damages. Cloudflare therefore seeks a reduction or offset via contribution from BadgerDAO

under NY state law (the "**Contribution Claim**", together with the Indemnification Claims, the

"**Cloudflare Claims**").

For several reasons, the Third-Party Complaint must be dismissed. First, none of the

Cloudflare Claims are sufficiently related to the subject to which this Court's jurisdiction is

anchored: Celsius and its bankruptcy estate. As this Court recently stated, "[i]t is well established

that a proceeding involving non-debtors will not be found to be related solely on the ground that

it will affect a distribution to creditors *unless the proceeding involves property in which the*

*debtor has a legally cognizable interest*." *In re Nat'l Events Holdings, LLC*, No. 17-11556

(JLG), 2023 WL 4771901, at *6 (Bankr. S.D.N.Y. July 26, 2023) (internal quotations omitted)

(emphasis added). The Indemnification Claims seek redress for Cloudflare alone in relation to an

alleged breach of an indemnity provision in a contract to which Celsius is neither a party nor

alleged to be a third-party beneficiary. The Contribution Claim, on the other hand, is an attempt

to drag BadgerDAO into this Court, despite that the victim, Celsius, considered and declined to

bring a claim against BadgerDAO. None of the Cloudflare Claims seek redress that purports to

have any impact on the Celsius estate, let alone a legally cognizable interest, the legal

requirement for the Court to have subject matter jurisdiction over the Third-Party Complaint. As

such, there is no basis for the Court to accept subject matter jurisdiction over the Cloudflare

Claims.

Second, BadgerDAO is a Decentralized Autonomous Organization. It does not "operate"

in the United States. It is not "at home" in the United States. The supposed negligent failures of

7

BadgerDAO that Cloudflare relies upon in Celsius' original Complaint against Cloudflare are not alleged to have occurred in the United States. The only facts between the Complaint and Third-Party Complaint which allege BadgerDAO had any contacts with the United States concern (a) BadgerDAO's alleged agreement to the Self-Service Subscription Agreement and (b) Mr. Spadafora's solicitations of Celsius upon which the Court has grounded its personal jurisdiction over Mr. Spadafora. In the words of the Supreme Court, however, "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the *defendant*, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (internal quotations omitted) (emphasis added). More pointedly, "it is the *defendant's conduct* that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285. Since there is no basis alleged for Cloudflare to rely on the conduct of BadgerDAO founder Christopher Spadafora, Cloudflare is left with the Self-Service Subscription Agreement as its only basis for the Court asserting personal jurisdiction over BadgerDAO. Thus, when the Indemnification Claims fall away as they must, there is no longer a basis for haling BadgerDAO before a United States federal court for a state law claim for contribution when all of the related activity occurred outside the United States.

The Third-Party Complaint should accordingly be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Even if the Court finds that it has subject matter jurisdiction over the Contribution Claim, the lack of subject matter jurisdiction over the Indemnification Claims is fatal to personal jurisdiction, and the Third-Party Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

8

## II.    RELEVANT BACKGROUND FROM CLOUDFLARE'S PLEADINGS

### A.    The Parties

#### a)  *BadgerDAO*

BadgerDAO is a Decentralized Autonomous Organization or "DAO," which is governed by the voting rights of its members that possess governance tokens, and therefore have the ability to vote on initiatives via the blockchain. Compl. ¶¶ 34-35. As a DAO, or a "decentralized collective of builders supporting community driven growth for Bitcoin across DeFi [*i.e.*, decentralized finance]," BadgerDAO does not have a registered place of business, a principal place of business, or a headquarters. *See* Third-Party Compl. ¶ 5. BadgerDAO provides a "cryptocurrency platform for its members to use Bitcoin as collateral across decentralized finance platforms." Compl. ¶ 5.

#### b)  *Cloudflare*

Cloudflare is a publicly traded company that, according to Cloudflare, serves to protect nearly 20% of the Internet. Third-Party Compl. ¶¶ 5, 23. In other words, Cloudflare operates globally to protect the Internet "by routing web traffic through its global CDN (content delivery network)." Third-Party Compl. ¶ 4; *see id.* ¶ 20 ("Cloudflare . . . provides . . . performance and connectivity services services [sic] to Fortune 500 companies, governments and other large enterprises.").

### B.    The Self-Service Subscription Agreement

Cloudflare alleges that a contract, the Self-Service Subscription Agreement, was entered into between BadgerDAO and Cloudflare "sometime in 2021." Third-Party Compl. ¶ 30. Cloudflare alleges that some BadgerDAO user created a free Cloudflare account in February 2021 and that additional BadgerDAO user accounts were created in August and September 2021. Third-Party Compl. ¶¶ 31-32.

Since August 2021, signing up for a Cloudflare account required users to manually enter an email address to proceed. Third-Party Compl. ¶34. Yet, Cloudflare does not specify which of these signups (that included, presumably, email addresses) constitute *the* Self-Service Subscription Agreement on which Cloudflare relies. *See* Third-Party Compl. ¶¶ 30-37. Since the particular agreement to the Self-Service Subscription Agreement is not alleged, there is also no allegation as to where this took place. Nor does Cloudflare specify which of its global network of companies would constitute the counterparty to such agreement. The only thing alleged pertaining to location is that the governing law clause designates California law.

### C.    Celsius's Allegations

Celsius alleged that Mr. Spadafora solicited Celsius's investment of its cryptocurrency on the BadgerDAO platform throughout 2021, "providing updates regarding the advancement of certain BadgerDAO projects, advertising the launch of new BadgerDAO products, providing investment advice to Celsius, and even providing directives to Celsius for how it should organize its assets so it could cast votes in favor of certain community initiatives on BadgerDAO." Compl. ¶ 48. According to Celsius, this "established a relationship of trust with Celsius employees." *Id.*

Celsius was able to cast votes in favor of BadgerDAO community initiatives because Celsius was a governance token holder. *See* Third-Party Compl. ¶ 26. As a governance token holder, Celsius itself was a BadgerDAO governing member alongside Mr. Spadafora. *Id.*

Celsius alleges that Mr. Spadafora breached the fiduciary relationship that existed between the governing members of BadgerDAO by "outsource[ing] a significant portion of BadgerDAO's security to a third party called Cloudflare." Compl. ¶ 7. According to Celsius, however, Cloudflare's services were deficient, and this deficiency led directly to the December Hack. *Id.* ¶¶ 8-9. Although Celsius alleges that "Mr. Spadafora and his team . . . failed to

10

implement basic security protocols" it is according to Celsius "ultimately, Cloudflare's negligence in addressing th[e] problem [which] came back to haunt all those involved." *Id.* ¶¶ 12-13.

## III.    ARGUMENT

### A.    The Court Lacks Subject Matter Jurisdiction over the Third-Party Complaint

"When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds such as [Rule 12(b)(2)], the Court must consider the Rule 12(b)(1) motion first." *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011). A case must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the . . . court lacks statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction . . . If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000).

It is the "plaintiff asserting subject matter jurisdiction [that] has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. "The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 3:12-CV-1470 (CSH), 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)). The Court must accept all factual allegations in the Third-Party Complaint as true and draw all reasonable inferences in favor of Cloudflare. *Lerner*, 318 F.3d at 117. "On a Rule 12(b)(1) motion, however, the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists" rather than the movant. *Gonzalez*, 2014 WL 2475893, at *2.

11

The Third-Party Complaint makes the single conclusory contention that the Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. Third-Party Compl. ¶ 15. No further explanation or reasoning is offered. The Third-Party Complaint therefore alleges subject matter jurisdiction exclusively based on the bankruptcy court's jurisdiction under Title 28. Even with the Court accepting all factual allegations as true and drawing all reasonable inferences in Cloudflare's favor, the Third-Party Complaint is facially deficient since 28 U.S.C. §§ 157 and 1334 do not provide a basis for bankruptcy court jurisdiction over the Cloudflare Claims.

Section 1334 divides bankruptcy jurisdiction into four parts. Section 1334(a) provides that the district courts have "original and exclusive jurisdiction of all [bankruptcy] cases under title 11." 28 U.S.C. § 1334(a). Under 28 U.S.C. § 1334(b), the district courts also have "original but not exclusive jurisdiction of all civil proceedings arising under [the Bankruptcy Code], or arising in or related to cases under [the Bankruptcy Code]." 28 U.S.C. § 1334(b). Thus, the four possibilities for bankruptcy jurisdiction are: (i) the bankruptcy case under Title 11; (ii) cases 'arising under' the Bankruptcy Code; (iii) cases 'arising in' a bankruptcy case; and (iv) cases 'related to' a bankruptcy case. *See Nat'l Events Holdings*, 2023 WL 4771901, at *5.

Section 157 divides bankruptcy proceedings into "core" and "non-core." The Supreme Court has stated that "core proceedings are those that arise in a bankruptcy case or under Title 11." *Stern v. Marshall*, 564 U.S. 462, 467 (2011). In other words, core proceedings encompass the first three possibilities for bankruptcy jurisdiction found in 28 U.S.C. § 1334, while non-core proceedings are only those 'related to' a bankruptcy case. *See Nat'l Events Holdings*, 2023 WL 4771901, at *5 (citing *Stern*, 564 U.S. at 476).

"Proceedings 'arising under' the Bankruptcy Code are those 'that clearly invoke substantive rights created by federal bankruptcy law.'" *In re Robert Plan Corp.*, 777 F.3d 594,

596 (2d Cir. 2015) (quoting *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108–09 (2d Cir. 2006)). By contrast, "[p]roceedings 'arising in' a bankruptcy case are those claims that are not based on any right expressly created by the [Bankruptcy Code], but nevertheless, would have no existence outside of the bankruptcy." *Id.* at 596-97 (internal quotations omitted); *cf. Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P.*, 487 B.R. 158, 162 (S.D.N.Y. 2013) ("Claims 'arise in' bankruptcy when, although not based on any right expressly created by Title 11, they 'would have no practical existence but for the bankruptcy.'") (quoting *In re Casual Male Corp.*, 317 B.R. 472, 476 (Bankr. S.D.N.Y. 2004)).

When it comes to an adversary proceeding, "[t]he relevant inquiry in determining whether [the adversary] proceeding is a core proceeding 'is whether the nature of the adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power.'" *Shea & Gould v. Red Apple Cos. (In re Shea & Gould)*, 198 B.R. 861, 865-66 (Bankr. S.D.N.Y. 1996) (quoting *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1389 (2d Cir. 1990)).

The Cloudflare Claims fall into neither the core nor non-core category. First, the Cloudflare Claims do not satisfy the requirements to be considered a core proceeding since they are neither based on a right expressly created by Title 11 nor would they not exist but for the bankruptcy. All four Cloudflare Claims arise either from a contract to which the Debtor was not a party or from a statutory claim for contribution under the NY CPLR. Third-Party Compl. ¶¶ 70-103. None of these Cloudflare Claims have anything to do with the Bankruptcy Code and all could exist in the absence of the bankruptcy.

Nor do the Claims in the Adversary Proceedings against Cloudflare themselves constitute core proceedings. This fact precludes the argument that the Third-Party Complaint obtains

13

bankruptcy jurisdiction via the Adversary Proceedings, having 'arisen in' a (core) bankruptcy case. The Adversary Proceedings are not based on a right expressly created by Title 11 nor would they "have no practical existence but for the bankruptcy." The Claims allege common law torts, which are not substantive rights created expressly by Title 11. Compl. ¶¶ 80-94. The reasoning of the Second Circuit in *Robert Plan* applies equally here. In that case, the bankruptcy court had asserted jurisdiction in reliance on a provision of Title 11 which required the trustee to "continue to perform the obligations" as ERISA administrator if the debtor had previously served in such a role. *Robert Plan*, 777 F.3d at 597. The Second Circuit reasoned that the relevant provision of Title 11 "neither alters the substantive duties of ERISA plan administrators nor establishes substantive rights regarding ERISA plans. Instead, [Title 11] provides the 'procedural vehicle for the assertion of a right conferred by some other body of law'—in this case, ERISA." *Id.* (quoting *Matter of U.S. Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997)).

In the present case, the Claims asserted in the Adversary Proceedings merely ended up in bankruptcy when "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case" became part of the Celsius estate under 11 U.S.C. § 541(a)(1). Here, like in *Robert Plan*, 11 U.S.C. § 541(a)(1) did not establish or substantively alter the common law claims that had arisen prior to the bankruptcy, and which claims Celsius would have been free to pursue on its own behalf but for the commencement of the bankruptcy case. As such, the Adversary Proceeding cannot be considered a core proceeding. *Cf. U.S. Brass Corp.*, 110 F.3d at 1268 ("Core proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law.").

14

A bankruptcy court may exercise jurisdiction over a non-core proceeding under 28 U.S.C. § 157(c)(1) if the proceedings are "otherwise related to a case under [the Bankruptcy Code]." *Robert Plan*, 777 F.3d at 597. The test for relatedness is "whether the outcome of the proceeding could conceivably have any effect upon the [debtors'] estate being administered." *Id.* (quoting *In re Turner*, 724 F.2d 338, 341 (2d Cir. 1983)); *see also U.S. Brass Corp.*, 110 F.3d at 1269 ("The impact of a claim on the size of the debtor's estate is a criterion of whether a claim is related to the bankruptcy and is therefore a noncore proceeding.") (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995)). Thus, the Adversary Proceeding is a non-core proceeding because it will have a conceivable impact on the size of the Celsius estate. Moreover, since the Adversary Proceeding is a non-core proceeding, the Third-Party Complaint does not "arise in [a] case under title 11." *Nat'l Events Holdings*, 2023 WL 4771901, at *5.

Second, the Cloudflare Claims do not themselves satisfy the requirements to be considered non-core proceedings under 28 U.S.C. §§ 157 and 1334 because the relief sought by the Cloudflare against BadgerDAO will not have any material impact on the Celsius estate. The Court's reasoning in *National Events Holdings*, involving a nearly identical situation, is directly applicable in the present case. In *National Events Holdings,* just like in the present case, there was "a dispute between non-debtors . . . over the enforcement of [an] alleged right to indemnification . . . in [a] Third-Party Complaint." *Nat'l Events Holdings*, 2023 WL 4771901, at *5. Just like in the present case, that dispute was "not a core proceeding because it does not directly involve any of the bankruptcy estates and does not arise under title 11 or in [a] case under title 11." *Id.* In that case the third-party complaint asserted non-core concurrent jurisdiction "because the outcome of that litigation could have a 'conceivable effect' on the debtor's estate, as 'it may affect the debtor's rights or the administration of the estate.'" *Id.*

15

According to the Court in *National Events Holdings*, however, "[i]t is well established that 'a proceeding involving non-debtors will not be found to be related solely on the ground that it will affect a distribution to creditors unless the proceeding involves property in which the debtor has a legally cognizable interest.'" *Id.* at *6 (quoting *Holland Indus., Inc. v. United States (In re Holland Indus., Inc.)*, 103 B.R. 461, 469 (Bankr. S.D.N.Y. 1989)). The Court goes on to cite numerous cases that stand for the same proposition.[3]

Finally, the Court concludes that:

> The Debtor has no legally cognizable interest in the Third-Party Complaint. Any judgment awarded to [the Third-Party Plaintiff] on the complaint will direct [the Third-Party Defendant] to pay damages directly to [the Third-Party Plaintiff], not to the Chapter 7 Trustee. The proceeds of the litigation, if any, will not constitute estate property, and the resolution of that action will not affect the property available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors.

*Id.* There is no difference from the situation at hand. All the Cloudflare Claims request the same thing: relief from (or against) BadgerDAO directly to Cloudflare without any effect on property in which Celsius has a legally cognizable interest.

Specifically, the Indemnification Claims all relate to the Cloudflare's allegation of indemnity, be that in the form of a breach of contract action, anticipatory repudiation, or for declaratory judgment. Third-Party Compl. ¶¶ 70-97. All must fail for the exact reasons given by

---

[3] *See Nat'l Events Holdings*, 2023 WL 4771901, at *6 ("[S]ee *Spinner Fam. Holdings, LLC. v. GRG Chubb1 LLC (In re Garces Rest. Grp., Inc.)*, No. 18-1507, 2019 WL 3002932, at *4 (Bankr. D.N.J. July 9, 2019) ("Thus, 'a proceeding involving non-debtors will not be found to be related ... unless the proceeding involves property in which the debtor has a legally cognizable interest.'" (quoting *Industrias Vassallo, Inc. v. P.R. Elec. Power Auth. (In re Industrias Vassallo, Inc.)*, No. 08-7752, 2015 WL 4626763, at *4 (Bankr. D.P.R. July 31, 2015))); *see also Neill v. Borreson (In re John Peterson Motors, Inc.)*, 56 B.R. 588, 596 (Bankr. D. Minn. 1986) ("The dispute in question involves two non-debtors, in no way implicates property of the bankruptcy estate, and thus falls outside of the statutory jurisdictional grant of 28 U.S.C. § 1334 and is outside the ambit of 28 U.S.C. § 157(a) reference to bankruptcy judges."); *Barber v. Riverside Int'l Trucks (In re Pearson Indus.)*, 142 B.R. 831, 849–50 (Bankr. C.D. Ill. 1992) ("[W]here such cross-claims or third-party complaints involve a dispute between non-debtors which will merely determine which party will ultimately be responsible in the event that one of the nondebtors is found liable in the underlying adversary proceeding, jurisdiction is lacking." (citing *Official Creditor's Comm. of Prods. Liab. & Personal Injury Claimants v. Int'l Ins. Co. (In re Pettibone Corp.)*, 135 B.R. 847 (Bankr. N.D. Ill. 1992)))."). 

16

the Court in *National Events Holdings* for the lack of a legally cognizable interest by the Celsius

estate. The Contribution Claim alleges a claim under NY CPLR § 1401. *Id.* ¶ 103.  Section 1401

authorizes that "two or more persons who are subject to liability for damages for the same . . .

injury to property . . . *may claim contribution among them*." NY CPLR § 1401 (emphasis added).

Yet again, a claim for contribution is not a request for relief that could conceivably "affect the

property available for distribution to the creditors of a bankruptcy estate or the allocation of

property among such creditors." *Nat'l Events Holdings*, 2023 WL 4771901, at *6. Having failed

to allege any legally cognizable interest in property subject to the present claim, the Court cannot

exercise non-core jurisdiction over the Cloudflare Claims in the Third-Party Complaint.

From the foregoing it is clear that the Third-Party Complaint is facially deficient in its

allegations of subject matter jurisdiction over both the Indemnification Claims and the

Contribution Claim, and that Cloudflare has therefore not met its burden of proving that the

Court has subject matter jurisdiction.

> **B.**     **The Court Lacks Personal Jurisdiction over BadgerDAO as to the
> Contribution Claim**

In the event the Court declines subject matter jurisdiction over the Indemnification

Claims but finds that it has subject matter jurisdiction over the Contribution Claim, then the

Third-Party Complaint fails to establish a basis for personal jurisdiction over BadgerDAO.

"To establish personal jurisdiction over a defendant, due process requires a plaintiff to

allege (1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the

exercise of jurisdiction is reasonable in the circumstances." *SPV Osus Ltd. v. UBS AG*, 882 F.3d

333, 343 (2d Cir. 2018). In bankruptcy proceedings, the relevant forum is the United States,

rather than a specific forum state. *In re Fairfield Sentry Ltd.*, 660 B.R. 568, 579 (Bankr.

S.D.N.Y. 2024).

Personal jurisdiction may be either general or specific. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). On the other hand, "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)) (internal quotations omitted).

It is the plaintiff who bears the burden of proving that the court has personal jurisdiction over the defendant. *In re Firestar Diamond, Inc.*, 654 B.R. 836, 897 (Bankr. S.D.N.Y. 2023). The plaintiff must "make a *prima facie* showing that jurisdiction exists . . . rely[ing] on its own affidavits and supporting materials . . . to include factual allegations that . . . would suffice to establish jurisdiction over the defendant." *Id.* For the reasons set forth below, constitutional due process demands that the Third-Party Complaint against BadgerDAO be dismissed for lack of personal jurisdiction.

### a) *BadgerDAO Does Not Satisfy the Minimum Contacts Test with the United States regarding the Contribution Claim*

The Third-Party Complaint does not assert general jurisdiction over BadgerDAO. *See* Third-Party Compl. ¶ 17. It does not allege continuous and systematic contacts with the United States. There is no factual basis to render BadgerDAO, which Cloudflare admits "is purportedly structured as a Decentralized Autonomous Organization," at home in the United States. *See*

Third-Party Compl. ¶¶ 5, 12, 24. Thus, the inquiry is whether the Third-Party Complaint alleges sufficient facts that—assumed to be true—establish specific jurisdiction over BadgerDAO.

The Supreme Court has established two prongs of the minimum contacts test for specific jurisdiction. First, the defendant must "purposefully direct his activities at forum residents." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation omitted). This "purposeful availment" prong is satisfied when the defendant's contacts with the United States "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Id.* at 475 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Further, the "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285.

Second, as the Supreme Court has repeatedly explained, the underlying cause of action must "'arise out of or relate to' those activities." *Id.* The relevant test under this second prong is whether there is "an affiliation between the forum and the underlying controversy, principally, an activity or occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919) (internal brackets omitted).

In this case, the Third-Party Complaint fails to plead sufficient facts to meet either prong of the test for minimum contacts. First, there is no evidence of purposeful availment by BadgerDAO of the United States. In *Helicopteros Nacionales de Colombia, S.A. v. Hall*, the Supreme Court determined that the defendant had insufficient minimum contacts with the forum state in a wrongful death suit following a helicopter crash, where the defendant's contacts principally related to a contract for the sale and service of helicopters. 466 U.S. 408, 418 (1984). The situation is analogous to the case at present. Even on a generous reading, the contact alleged

19

by BadgerDAO with the United States is de minimis, and what contact there was, resembles that which was insufficient to meet the test in *Helicopteros*. The extent of the BadgerDAO contact—as opposed to that of Mr. Spadafora—alleged in the Third-Party Complaint pertains to the creation of free Cloudflare accounts by BadgerDAO users and their agreement to the terms of the Self-Service Subscription Agreement. Third-Party Compl. ¶¶ 6, 30-33. In *Helicopteros*, a physical trip to the forum state for the signing of a contract with a Texas company was deemed insufficient contacts. *Helicopteros*, 466 U.S. at 416. Here, Cloudflare has not even alleged a physical trip. Instead, the Third-Party Complaint alleges anonymous signups to a free service without any indication whether the users were even located in the United States. This is merely contact with someone that resides in the United States.

As this Court previously noted in its denial of Mr. Spadafora's Motion to Dismiss, the Supreme Court in *Walden* declined personal jurisdiction in a situation where the defendant's "only connection with the forum state was through his contacts with the plaintiffs." Memorandum Opinion and Order Denying Spadafora Motion to Dismiss ("Spadafora Opinion"), Dkt. No. 24 (citing *Walden*, 571 U.S. at 285). According to the Supreme Court, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's *conduct* that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285 (emphasis added). The only alleged conduct of BadgerDAO's that connects it to the forum is the signing of Cloudflare's Self-Serve Subscription Agreement, but that is not alleged to have taken place in the United States. That leaves Cloudflare as the only link between BadgerDAO and the forum.

The second prong of the minimum contacts test, namely that the underlying cause of action must arise out of or relate to BadgerDAO's contacts with the United States, is also not

20

met. In *Walden*, as this Court previously noted in its denial of Mr. Spadafora's Motion to

Dismiss, it was reasoned that "the defendant's actions did not connect him to the forum because

none of the tortious conduct occurred within the forum." Spadafora Opinion at 3 (citing *Walden*,

571 U.S. at 285). The same is true here since none of the alleged conduct by BadgerDAO in

relation to the Contribution Claim is alleged to have occurred in the United States. *See* Third-

Party Compl. ¶¶ 51-59 (alleging no facts suggesting that BadgerDAO's alleged negligent

conduct occurred in the United States).

Accordingly, the Third-Party Complaint is facially deficient in its allegations of

minimum contacts by BadgerDAO with the United States.

### b) *There Is No Factual or Legal Basis to Attribute Mr. Spadafora's Conduct to BadgerDAO for the Purposes Personal Jurisdiction*

There is no factual or legal basis in the Third-Party Complaint upon which Mr.

Spadafora's actions that made him subject to the Court's personal jurisdiction can be attributed

to BadgerDAO for purposes of personal jurisdiction.

As previously noted, Celsius alleges a breach of fiduciary duty against Mr. Spadafora in

his personal capacity. *See* Compl. ¶¶ 95-100. Celsius *declined* to bring any claims against

BadgerDAO and therefore focused on the activities of Mr. Spadafora in his personal capacity as

a fellow governance token holder of BadgerDAO that made him subject to the Court's

jurisdiction. Namely, Mr. Spadafora's numerous solicitations of Celsius in the United States that

caused Celsius to invest its cryptocurrency on the BadgerDAO platform and become a governing

member of BadgerDAO. *See* Third-Party Compl. ¶ 60.

Cloudflare has not raised any legal theories which could impute Mr. Spadafora's

activities to BadgerDAO. Cloudflare merely alleges that Mr. Spadafora is a "governing member"

among an unknown number of other members (including Celsius) who "purchased and possessed

21

governance tokens called BADGER . . . that they could use to vote on BadgerDAO initiatives via the blockchain." Third Party Compl. ¶ 26 (citing Compl. ¶¶ 35, 39). Without such a factual or legal basis, Mr. Spadafora is a third person for purposes of a personal jurisdiction analysis, and the Supreme Court has stated that such unilateral acitivity "is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros,* 466 U.S. at 417.

From the foregoing it is clear that in the absence of the Indemnification Claims, the Third-Party Complaint is facially deficient in its allegations of personal jurisdiction, and that Cloudflare has therefore not met its burden of proving that the Court has personal jurisdiction over the Contribution Claim.

## IV.   CONCLUSION

The Court should dismiss with prejudice the claim against BadgerDAO because the Third-Party Complaint fails to provide a basis for subject matter jurisdiction.

Dated: October 10, 2025

/s/ *Peter Scoolidge*
Peter Scoolidge
SCOOLIDGE PETERS RUSSOTTI & FOX LLP
2 Park Avenue – 20th Floor
New York, NY 10016
(212) 729-7708
peter@sprfllp.com

*Counsel for Third-Party Defendant BadgerDAO*